NICHOLAS THOURON v. WILLIAM SKIRVIN ET AL.

Decided October 15, 1909.

**1.—Appeal—Practice—Approval of Statement of Facts.**

Where it appeared from the record that the appellee, defendant in the court below, was a nonresident of the State and was neither present nor represented by attorney at the trial, and that the statement of facts prepared by the appellant, plaintiff below, was presented to the attorney who filed a disclaimer for appellee, and said attorney declined to examine the same upon the ground that he did not represent the appellee in the matter of appeal, a motion by appellee to strike out the statement of facts because it did not appear from the certificate of the trial judge appended thereto that the same was ever submitted to appellee or his attorney or an opportunity given them to prepare a statement, will be overruled.

**2.—Vendor and Vendee—Rescission—Damages.**

It matters not how fraudulent a transaction may have been by which a vendee induced a vendor to accept a reconveyance of the property and to cancel and surrender the notes given in consideration therefor, the vendor would not be entitled to keep the property and also recover of the vendee as actual damages the amount of the notes given therefor, in the absence of allegation and proof that the property reconveyed was not worth the amount of the notes surrendered.

**3.—Actual Damages—Attorney's Fees.**

In a suit by a vendor against a vendee to rescind a sale of land, the vendor is not entitled to recover attorney's fees as actual damages.

**4.—Exemplary Damages.**

Exemplary damages can not be recovered unless plaintiff is shown to have sustained actual damages.

Appeal from the District Court of Galveston County. Tried below before Hon. Robt. G. Street.

*Stewarts, Geo. T. Burgess* and *J. Homer Jones,* for appellant.— Where one, in ignorance of a state of facts or condition of a thing, relies solely upon the representations of another, and upon such representations parts with something of value, he is entitled to recover the value of the thing parted with upon showing that such representations were false and fraudulent. Parker v. Crawford, 3 Texas Civ. App., 436; McCall v. Sullivan, 1 Texas Civ. App., 11.

The court erred in refusing to give judgment for plaintiff for exemplary damages, because the evidence showed that defendants had by false and fraudulent representations procured from plaintiff the title to the land in controversy and had maliciously and fraudulently cast a cloud on the title thereto. Oliver v. Chapman, 15 Texas, 410; San Antonio & A. P. Ry. Co. v. Kniffin, 23 S. W., 457; Gross v. Hays, 11 S. W., 522; Cole v. Tucker, 6 Texas, 267; Gordon v. Jones, 27 Texas, 620; Graham v. Roder, 5 Texas, 148; Shaw v. Brown, 41 Texas, 446; Vincent v. Mayblum, 1 White & Wilson, sec. 763; Cody v. Case, 26 Pac., 448, and cases cited; Winstead v. Hulue, 48 Pac., 994.

*James B.* and *Chas J. Stubbs,* for appellee.

PLEASANTS, CHIEF JUSTICE.—This action was brought by appellant against the appellees to recover the title and possession of certain lots or parcels of land on the Antonio Julia survey in Galveston County, and to recover actual and exemplary damages for alleged wrongful, fraudulent and malicious acts of defendants in attempting to acquire title to plaintiff's land by fraud and in thereby clouding the title thereto.

In addition to the usual allegations to an action of trespass to try title, the petition alleges in substance: That on November 3, 1893, the defendant, William Skirvin, induced the plaintiff, who was then the owner in fee simple of the Antonio Julia 320-acre survey in Galveston County, to subdivide same into lots of about 15 acres each, said lots being numbered 44 to 61 inclusive, and to sell all of said lots to said defendant. That plaintiff on said date conveyed all of said lots to defendant, and in part consideration for such conveyance the defendant executed and delivered to plaintiff his certain several promissory notes for the aggregate sum of $5,400, which said notes were secured by vendor's lien on the land, expressly retained in the deed conveying said lots. That thereafter on December 3, 1893, Skirvin conveyed all of the lots to the Alta Loma Investment & Improvement Company, a corporation organized and controlled by Skirvin and M. S. Waller. That the deed conveying the property to the corporation recites a consideration of $1,000 in cash, and further recites the fact that the conveyance is made subject to the encumbrance of $5,400 due plaintiff, but that in fact no consideration was paid for said conveyance. "That at and prior to the time that this plaintiff was induced by William Skirvin to convey said real property to said Skirvin, said William Skirvin had entered into an agreement and conspiracy with one M. S. Waller, whereby it was agreed between said William Skirvin and said M. S. Waller that they would defraud plaintiff out of the said Antonio Julia survey, but the fact of the said fraud and conspiracy was not known to this plaintiff at that time and was not discovered by him until long subsequent.

"That the said Antonio Julia survey was enclosed together with various other surveys in a pasture by one Jacques Tacquard. That said Waller and said Skirvin, conspiring together, purchased from said Jacques Tacquard certain lands owned by him, and did fraudulently induce said Jacques Tacquard, he being a man unable to read or write, to execute to the said M. S. Waller a deed of conveyance for the said Antonio Julia survey, by which said deed apparently the Antonio Julia survey was by said Jacques Tacquard conveyed to said M. S. Waller, and which said deed bore date of June 6, 1892, which deed was not filed for record, however, until October 31, 1894, and of which deed plaintiff had no knowledge at the time he conveyed the property to said Skirvin."

It is further alleged that Waller, at the instigation of Skirvin, conveyed the Antonio Julia survey to Thomas C. Brown by deed of date November 26, 1894, and that thereafter when said vendor's lien notes executed by Skirvin became due, he refused to pay the same on the ground that there was an outstanding title to the land in Brown, which he pretended to believe was superior to plaintiff's title, and pro-

posed to plaintiff that if he (plaintiff) would cancel and surrender said notes he (the said Skirvin) would procure a reconveyance of the lots to plaintiff. That plaintiff was led to believe by the representations of said defendant that his title to the property was defective, and agreed to accept the proposition to surrender said notes in consideration of a reconveyance of said property.

That in pursuance of his said proposition the defendant Skirvin had the said Thomas C. Brown to reconvey the Antonio Julia survey to M. S. Waller and had the said Waller to convey same to the Alta Loma Company.

That thereafter said Skirvin on May 4, 1898, tendered to plaintiff a deed from said company reconveying to him the lots theretofore conveyed by plaintiff to said defendant, and that plaintiff accepted said deed and canceled and surrendered to defendant his said notes. That at the time plaintiff accepted said deed and surrendered the notes he was assured by Skirvin that the Alta Loma Company held the Tacquard title to said land, and plaintiff relied upon said representations, and would not otherwise have accepted said conveyance in satisfaction of said notes.

"That the said Alta Loma Investment & Improvement Company was a corporation which was owned, controlled and manipulated by said William Skirvin and M. S. Waller.

"That said William Skirvin did cause said Alta Loma Investment & Improvement Company to convey to one M. B. Gerry, of Pueblo, Colo., lots 46 to 55 inclusive in said Antonio Julia survey, said deed dated June 3, 1895, and reciting that said property was sold subject to vendor's lien. The only vendor's lien outstanding against this property was said vendor's lien held by this plaintiff, and the lien of this plaintiff was the lien intended and referred to in said deed to said Gerry. That in truth and in fact said Gerry paid no consideration whatever to said Alta Loma Investment & Improvement Company, but took title to said property merely in trust for said William Skirvin in furtherance of the purpose of said William Skirvin to defraud this plaintiff.

"That said Skirvin, though having signed said deed from the Alta Loma Investment & Improvement Company in his capacity as secretary of said company, and knowing full well of the existence thereof, did in truth and in fact state to this plaintiff that the Alta Loma Investment & Improvement Company had not conveyed said real property, but that same belonged to said Alta Loma Investment & Improvement Company at the time of the execution and delivery of the aforesaid deed from said company to this plaintiff.

"That this statement was made by William Skirvin for the purpose of defrauding this plaintiff, and at the time same was made was known by said Skirvin to be false and fraudulent.

"That to further carry out the purpose to defraud this plaintiff, said Skirvin did have M. B. Gerry execute a deed of conveyance to one J. H. Fesler of Pitkin County, Colorado, which deed described the property therein attempted to be conveyed as lots numbered 46 to 55 inclusive, and being the same lots by like numbers described in the aforesaid deed from the said Alta Loma Investment & Improvement

Company to this plaintiff, and being the said property that had been by this plaintiff conveyed to William Skirvin.

"That said deed from Gerry to Fesler was made, executed and delivered without any consideration whatsoever, and said Fesler had no real interest in said property, but took and held the same and still holds same of record for the use and benefit of said William Skirvin, who is claiming to own said real property. That the placing of the apparent title to said property in said Fesler was for the purpose of defrauding this plaintiff, and was conceived and carried out by said William Skirvin with that end in view. That both said Gerry and Fesler in all said matters were represented by William Skirvin and M. S. Waller, and said Gerry and Fesler in truth and in fact had no interest in said transactions or said property, but merely permitted the use of their names by said William Skirvin in order that he might, by the use of said names and apparent placing of title in said Gerry and Fesler, place said title again outstanding and in an innocent party, and thereby again defraud this plaintiff. That said Fesler in so taking title to said property and holding same in his name, and said William Skirvin, in having said Fesler take property in his name and placing deed of record, are conspiring together to injure this plaintiff and so conspiring and so acting, have injured and damaged this plaintiff in the sum of $7,500.

"That said Skirvin and said Fesler by their actions have cast a cloud upon title of plaintiff to said property. That said William Skirvin is now offering said property for sale and pretending to own same, though he knows that said real property belongs to plaintiff and that this plaintiff took and accepted a deed of conveyance from the Alta Loma Investment & Improvement Company on the representation of said Skirvin that by said conveyance from said Alta Loma Investment & Improvement Company to this plaintiff, this plaintiff would be revested with the title to said real property. That the action of said William Skirvin in so offering said property for sale and in claiming to own same casts a cloud on title of this plaintiff, and same is done maliciously and wrongfully, and for the sole and only purpose of injuring title of this plaintiff to said real property.

"That defendant R. S. Rowland did on June ——, 1908, file with the county clerk of Galveston County, Texas, two instruments, one purporting to be a deed from J. H. Fesler to J. R. Morse, and the other to be a deed from J. R. Morse to R. S. Rowland, conveying portions of the hereinbefore described real property. That said deed from Fesler to Morse and said deed from Morse to Rowland were instigated and inspired by said William Skirvin and said R. S. Rowland, who, conspiring together, thereby sought to defraud this plaintiff of his property and sought to cast a cloud on the title thereof, and by the recording of said deeds did cast a cloud on the title of plaintiff to the said real property. That in truth and in fact said Fesler at no time had title to said real property and the pretended deed from said Fesler to said Morse passed no title to Morse and was not intended to vest title in Morse. That said deed from said Fesler to said Morse was prepared by said M. S. Waller and no consideration whatever paid to said Fesler for said deed. That said pretended deed from said

Morse to R. S. Rowland was inspired and a scheme concocted by defendants Skirvin and Rowland for the purpose of defrauding this plaintiff and for the purpose of clouding title of this plaintiff to the said real estate, and same does operate as a cloud on the title of plaintiff. That in truth and in fact said Fesler knew nothing of said Morse and said Morse had never seen said R. S. Rowland, but signed the deed in blank, and said R. S. Rowland thereupon filled in said blank with his name, to wit, the name of R. S. Rowland. That said R. S. Rowland is confederating together with William Skirvin, J. H. Fesler and J. R. Morse in his said acts, and in holding title to said property in his name in furtherance of said wrongful acts, and said Skirvin and said Fesler and said J. R. Morse and said R. S. Rowland by their said acts are casting a cloud on title of this plaintiff. That said plaintiff by said wrongful acts of defendants is damaged in the sum of $7,500. That said real property is of the value of $25 per acre, and this plaintiff could sell said real property for $25 per acre but is prevented from doing so by the wrongful acts of said Skirvin, Morse, Rowland and said Fesler as hereinbefore stated, as no one can be induced to purchase said property because of the said claim so being asserted by said Skirvin, Morse, Rowland and Fesler.

"That said action of said Skirvin and Morse and Rowland and said Fesler have necessitated the employment of attorneys to bring this suit to remove cloud from said title, and said acts are malicious and done for the purpose of injuring, harassing and annoying said plaintiff, and because of the annoyance so caused to this plaintiff and because of said malicious acts this plaintiff should recover of said defendants exemplary damages which plaintiff now alleges in the sum of $10,000.

"Wherefore plaintiff prays that on trial hereof that he have judgment against said defendants for title and possession of and to said Antonio Julia survey, including each and every lot therein, and that the cloud cast on plaintiff's title by reason of claim of these defendants be removed, and that the aforesaid deed from the Alta Loma Investment & Improvement Company to M. B. Gerry and from said M. B. Gerry to J. H. Fesler and from J. H. Fesler to J. R. Morse and from said J. R. Morse to R. S. Rowland be declared null and void and of no effect, and further that this plaintiff do have and recover of and from said J. H. Fesler and said William Skirvin and said J. R. Morse and said R. S. Rowland his actual damages as aforesaid in the sum of $7,500; and further, that plaintiff do have and recover of and from said Skirvin, and of and from said Fesler, and of and from said J. R. Morse, and of and from said R. S. Rowland, jointly and severally, the sum of $10,000 as exemplary damages by reason of the malicious and wrongful acts of said defendants as hereinbefore stated, and plaintiff further prays for such other, further and general relief as he may be entitled to in law and equity."

The defendants Skirvin, Morse and Rowland each filed an answer disclaiming any right, title or interest in the land sued for. Plaintiff dismissed his suit as to defendant Fesler.

Upon the trial in the court below judgment was rendered in favor of plaintiff for all of the land sued for and for removal of the cloud

upon his title caused by the claims of the defendants, but no damages were adjudged in plaintiff's favor against any of the defendants. From that portion of the judgment refusing plaintiff's claim for damages he prosecutes this appeal.

Appellee Skirvin has filed a motion to strike from the record the statement of facts filed by appellant, on the ground that it does not appear from the certificate of the judge appended to said statement that the same was ever submitted to the defendant or his attorneys, or that any opportunity was given defendant or his attorneys to prepare and present a statement. The certificate of the judge is as follows:

"Galveston, Texas, Decr. 11, 1908. The within statement of facts having been presented to me by the plaintiff's attys., and no atty. for either of the defendants having been present at the trial, and no statement being presented to me on behalf of the defendants, and having examined the statement herewith and finding the same in all things correct, the same is hereby approved as a true and correct statement of the facts given in evidence on the trial."

In reply to this motion appellant has filed the affidavit of George T. Burgess, one of his attorneys, to the effect that after the statement was prepared and within the time prescribed by the statute he presented the statement to Mr. Charles J. Stubbs, one of the attorneys who filed the disclaimer for defendant, and requested him to examine same, and if he found it correct to agree thereto; that Mr. Stubbs stated that neither he nor his firm represented the defendant in the matter of preparing such statement, and that he would have nothing to do with it.

It is shown that the defendant Skirvin is a nonresident of the State, and it does not appear that he was present at the trial, and the certificate of the judge shows that he was not represented by any attorney on said trial. Upon this showing we think the certificate is sufficient, and the motion should be overruled.

The first assignment of error is as follows: "The court erred in refusing to give judgment for plaintiff, for actual damages because the evidence showed that by the acts of the defendants the plaintiff had been damaged in the sum of $5,400, the face value of the purchase-money notes given by Skirvin in part payment of property in controversy."

The statement under this assignment, which contains a summary of all the material facts shown in the statement of facts, does not sustain the assignment. There is no evidence that the plaintiff suffered any damage by reason of the fraudulent representations of the defendant Skirvin by which he was induced to cancel and surrender the notes due him by Skirvin. There is neither allegation nor proof that the property reconveyed to him in consideration of the surrender of the notes was not worth the amount of said notes; and in any event plaintiff would not be entitled to keep the property and recover of defendants as actual damages the value of the consideration given therefor, it matters not how fraudulent the transaction may have been on the part of the defendant.

The second assignment complains of the refusal of the court to give

plaintiff judgment for actual damages in the amount of the attorney's fees shown to have been paid by him in the necessary prosecution of this suit. It is well settled by the decisions of our Supreme Court that attorney's fees in suits of this character are not recoverable as actual damages. Landa v. Obert, 45 Texas, 539; Salado College v. Davis, 47 Texas, 135; Harris v. Finberg, 46 Texas, 79; Houston & T. C. Ry. Co. v. Oram, 49 Texas, 346; Vance v. Lindsey, 60 Texas, 290.

It is also well settled that exemplary damages can not be recovered unless the plaintiff is shown to have sustained actual damages. Flanagan v. Womack, 54 Texas, 50; Girard v. Moore, 86 Texas, 675. No actual damages being shown in this case, plaintiff was not entitled to recover exemplary damages, and the third assignment of error which complains of the refusal of the court to render judgment for plaintiff for exemplary damages must be overruled.

This disposes of all the questions presented by appellant's brief, and, there being no error in the judgment of the court below, it is affirmed.

*Affirmed.*

Writ of error refused.