ST. LOUIS, B. & M. RY. CO. et al. v. GREEN. (No. 7055.)

(Court of Civil Appeals of Texas. Galveston. Feb. 5, 1916.)

1. EVIDENCE ⊚⇒113 — RELEVANCY — MARKET VALUE OF PROPERTY.

In an action for damages for depreciation of real estate, evidence of the cost of constructing a house three years before the acts complained of was admissible for the jury to consider in connection with other testimony to assist them in determining the market value of the real estate immediately before and after the acts complained of.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. ⊚⇒113.]

2. EVIDENCE ⊚⇒543 — OPINION EVIDENCE — MARKET VALUE OF PROPERTY.

In an action for damages for depreciation of real estate, the testimony of a witness who had bought and sold real estate in the vicinity of the property in question as to his opinion of the value of the plaintiff's lot before the acts complained of and the percentage of depreciation caused thereby, was admissible, as relevant and material to the question in issue.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2356½–2358; Dec. Dig. ⊚⇒543.]

3. RAILROADS ⊚⇒265—EFFECT OF RECEIVERSHIP—TORTS.

In an action against the railroad company alone, it was error for the court not to limit the inquiry of the jury as to what damages resulted to the plaintiff's property, if any, to such acts complained of as occurred prior to the date on which the railroad company was placed in the hands of a receiver, as no recovery could be had against the railway company for damages suffered after its property had passed into the hands and control of the receiver.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 838–853; Dec. Dig. ⊚⇒265.]

4. TRIAL ⊚⇒256—INSTRUCTIONS—FAILURE TO REQUEST SPECIAL CHARGE.

The plaintiff could not complain of the court's error in defining the measure of damages where he did not make a request for a special charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. ⊚⇒256.]

5. RAILROADS ⊚⇒222—INJURIES FROM OPERATION—SUFFICIENCY OF EVIDENCE.

In an action to recover damages from a railroad company for destruction and depreciation of real estate caused by its siding and engines, evidence held sufficient to sustain the verdict and judgment.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. ⊚⇒222.]

6. TRIAL ⊚⇒115—ARGUMENTS OF COUNSEL.

It was error for counsel for the plaintiff to comment to the jury on the court's refusal to direct a verdict for the defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 279–283, 295, 298; Dec. Dig. ⊚⇒115.]

7. TRIAL ⊚⇒29—REMARKS AND CONDUCT OF JUDGE.

It was error for the trial judge, in making a ruling in the presence of the jury, to say or do anything calculated to influence the jury in reaching its verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 80–83, 508; Dec. Dig. ⊚⇒29.]

8. TRIAL ⊚⇒115—ARGUMENT OF COUNSEL.

It was error for counsel for the plaintiff to tell the jury that the court thought a verdict should be rendered for the plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 279–283, 295, 298; Dec. Dig. ⊚⇒115.]

9. APPEAL AND ERROR ⊚⇒1060 — REVIEW — HARMLESS ERROR.

Error by counsel in telling the jury that the court thought a verdict should be rendered for plaintiff would not alone be sufficient to reverse the judgment, where under the facts proven the jury could not have found in favor of defendant and such an argument was not calculated to increase the amount found by the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ⊚⇒1060.]

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

10. APPEAL AND ERROR ⟷1170 — REVIEW — HARMLESS ERROR.

A technical error in a judgment which could be corrected by the appellate court would not be cause for reversal of judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. ⟷1170.]

11. RECEIVERS ⟷149—PAYMENT OF CLAIMS —JUDGMENT IN ANOTHER ACTION.

A judgment, recovered against a railroad company while its properties are in the hands of a receiver, should be presented to the court in which a receivership is pending as evidence of the claim and for approval and payment.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 261–266; Dec. Dig. ⟷149.]

Appeal from District Court, Matagorda County; Sam'l J. Styles, Judge.

Action by George Green against the St. Louis, Brownsville & Mexico Railway Company and Frank Andrews, receiver. From a judgment rendered on a directed verdict for defendant Frank Andrews, and on a verdict for the plaintiff, the defendant railroad company appeals. Reversed and remanded.

Gaines & Corbett, of Bay City, and Claude Pollard and E. H. Crenshaw, Jr., both of Kingsville, for appellant.

LANE, J. This suit was instituted by George Green against the St. Louis, Brownsville & Mexico Railway Company and Frank Andrews, receiver, on the 5th day of March, 1914, and for cause of action he alleges, in substance: That plaintiff is the owner of lot No. 12, in block 27, of the town of Bay City, Tex., upon which he had constructed a two-story dwelling house, expecting to make the same his home. That about the year 1904, the defendant company constructed its main line along First street in said town of Bay City, opposite plaintiff's property, and that in the latter part of the year 1912 the defendant company imposed an additional servitude upon said First street, by the construction of a side or switch track, and by such additional servitude destroyed the use of said First street. Plaintiff furthermore alleged that the tracks of the defendant company are elevated as much as three feet above the level of plaintiff's premises, creating a dam and obstructing the drainage of water, and causing the water from ordinary rainfall to be impounded, dammed up, and to stand upon the plaintiff's premises; further alleging that the defendant has failed to provide any means for the draining of water across or under its roadbed, to plaintiff's damage in the sum of $500. So much for the allegations against the defendant railway company alone. The plaintiff then alleges that both of the defendants use the said side track as a place to park locomotives at night, in close proximity to plaintiff's premises, creating offensive smells and odors, to plaintiff's damage in the sum of $1,000. Plaintiff then alleges that such use of said side track by both of the defendants has rendered his property uninhabitable, and has depreciated the value of the same at least one-half. The defendant railway company expressly denied that its roadbed was elevated as claimed, or that it caused the water from ordinary rainfall to be impounded and stand upon plaintiff's premises, and specifically denied that it parked or bedded locomotives in close proximity to the plaintiff's residence, or that such use of the street rendered the plaintiff's property uninhabitable. The defendant Frank Andrews furthermore expressly pleaded that on the 5th day of July, 1913, he was appointed receiver of the properties of said railway company, and up to said date he was in no way responsible for the acts of commission or omission complained of by plaintiff, or for any acts occurring during the time that said railroad was conducting its own business. The case was called for trial on the 28th day of January, 1915. The court charged the jury to find a verdict for the defendant Frank Andrews, receiver, and submitted for the consideration of the jury the question of the railway company's liability only, and the jury returned a verdict in favor of the plaintiff for $500 against the railway company, and judgment was duly entered thereon. From this judgment the St. Louis, Brownsville & Mexico Railway Company alone has appealed.

Appellee has filed no brief. We shall therefore dispose of the issues as presented by the brief of appellant.

[1] The first assignment insists that the trial court erred in permitting the plaintiff to testify as to the sum expended by him in constructing his said house in 1909, because the acts of defendant of which complaint is made did not occur until some time in 1912, about three years after said house was built, and therefore such testimony was wholly insufficient to establish the market value of the property immediately before, or immediately after, the acts complained of.

Plaintiff, George Green, testified:

"I have a five-room two-story frame house I built there in 1909 after the July storm. I think I built that house about October, 1909. The house cost me $1,100.00; it is weather boarded outside and ceiled and papered inside. * * * I did have my house painted, but they have thrown oil on it and it turned black, the color of oil. * * * That is my home where my family and I live. I have a wife and children."

It will be noted that the assignment insists only that the testimony complained of is insufficient to establish the market value of the property immediately before or immediately after the acts of defendant complained of, and not that the testimony is immaterial and irrelevant to the issues being tried, and hence the last question is not presented for our consideration. However, while we agree with appellant that such testimony is not sufficient to establish the market value of the house of appellee im-

mediately before or immediately after the acts complained of, we do think such testimony was admissible, when considered together with other testimony, hereinafter set out, to assist the jury in determining the market value of said property immediately before and after the acts complained of, and, so believing, we overrule the first assignment.

[2] Assignments Nos. 2 and 3 insist that the trial court erred in admitting the testimony of the witnesses P. T. Swansey and C. M. Magill, hereinafter set out, because the same was immaterial and irrelevant, and does not show or tend to show the market value of plaintiff's property immediately before or immediately after the acts complained of. P. T. Swansey testified:

"I live in Bay City * * * and have been living here since 1901, and I am acquainted with property values in Bay City to some extent, and was so acquainted in the fall of 1912. I am acquainted with the property of the plaintiff, George Green, down at the Brownsville Railroad in the 'south end' of the town of Bay City, and was acquainted with the value of the property in that locality, in a general way, in 1912. Yes; I knew the market value of property in that locality at that time, as I bought and sold property down there. * * * George Green's property * * * between the 1st of September and 21st of December, 1912, before the switch in question was put in there, that lot, without any improvements, I think was worth $250. I could not say just what the house on that lot is worth, as I have never been inside of it, and only know it from the outside appearance, but I should judge that house, being a two-story house, and if it is ceiled and papered inside, would cost somewhere about $800 to build. I have worked at the carpenter's trade a good deal, and I judge, from the general outside appearance of that house and the cost of material during that time that the house was built, that $800 would be a fair valuation of the cost of the house to build it, including the cost of lumber, work, and everything. I heard George Green testify regarding the location of that side track there, and am acquainted with it, as to how close the side track runs to his lot, etc.; and, in view of the conditions as they really exist down there now, I would not hardly want that property at any price at all. By reason of this track being put in there, and these other things, I think that George Green's property has depreciated in value 50 per cent. In saying that this property has depreciated in value about 50 per cent. I had in mind the fact that the railroad company parks live locomotives to the number of two or three at a time and keeps steam up in them, opposite the house, which engines emit noxious odors and make uncanny noises."

On cross-examination this witness testified:

"The reason I stated I knew the value of this plaintiff's property unimproved was because I have bought and sold some property in that vicinity, but I am not considered a real estate man. I think I at one time owned an inside lot in the same block, just two lots away from the plaintiff's. * * * Yes, sir; the only transaction that I had down there at all near the time that this track was put in there in the fall of 1912 was the lot I bought, which is two lots away from the plaintiff's, and that was after the switch was put in. In the next block north of the one in question I owned at different times four or five lots."

C. M. Magill testified that the value of plaintiff's lot, without the house, before the acts complained of, was about $250, and that his estimate of the damage by reason of said acts would range from 15 per cent. to 25 per cent. of the value of the property. We think the testimony pertinent and material to the question in issue, and therefore overrule said assignments.

[3, 4] Assignment No. 4 complains of the court's charge, which reads as follows:

"In this case you will find a verdict for the defendant Frank Andrews, receiver. If you believe from the evidence that the plaintiff's property is rendered less valuable by reason of the construction and operation of the defendant St. Louis, Brownsville & Mexico Railway Company's switch over, across, and upon First street, or near plaintiff's said property, or that by the engines of defendant St. Louis, Brownsville & Mexico Railway Company, being parked on said switch, at or near plaintiff's property, as alleged in plaintiff's petition, or by both, you should find for the plaintiff and assess him such an amount of damage as you may believe from the evidence will compensate him for such depreciation, if any, in value of said property before and after the construction of defendant St. Louis, Brownsville & Mexico Railway Company's switch, or parking of said defendant's engines, or both, caused by the same. The measure of plaintiff's damage, if any he has sustained, is the difference between the market value of plaintiff's property before the acts complained of by the plaintiff and the market value of the same after said acts."

Appellant's contention is: First. That the court should have limited the inquiry of the jury as to what damages resulted to plaintiff's property, if any, by such acts complained of, as occurred prior to July 5, 1913, at which time its properties and the operation of its railroad were placed in the hands and under the control and management of Frank Andrews as receiver; that such charge does not so limit such inquiry, but it permitted the jury to assess such damages as occurred after July 5, 1913, if any, against appellant. Second. That such charge was insufficient upon the question of what constituted market value, or the method of determining the same.

In plaintiff's petition it is alleged as follows:

"That both of said defendants (the railway company and Frank Andrews, receiver) constantly used, and do now use, said side track as a place to park their locomotives at night, and do park or bed live locomotives, as many as two or three at a time, upon said track in close proximity to plaintiff's said residence, and allow them to stand at such place all night, at times, and the said locomotives, being oil burners, make disagreeable noises in blowing the oil, which keeps the fire alive, and the said burning oil creates noxious odors, and creates offensive smells, and the engines eject oil into plaintiff's yard and against his house, staining and disfiguring it; and the vibrations of said locomotives cause plaintiff's said house to vibrate violently at times, and on occasions to the extent of causing his dishes to fall from his table and be broken, and even jarring loose the shingles upon the roof of his dwelling house, to the extent of causing the same to leak whenever it rains thereon; and has even caused the paper upon the walls of his said house to crack—all of which things and acts were and are in violation of plaintiff's rights and a virtual destruction of his property without compensation, to

his great damage in the further sum of one thousand dollars. That such use of said street has rendered, and does render, plaintiff's said property uninhabitable as a home, and has depreciated the value thereof at least one-half of such value it had before the acts complained of were committed."

The defendant railway company specially denied that it has used said side track as a place to park engines since July 5, 1913, same being the date on which Frank Andrews took possession, control, and management of all of its properties, as receiver.

The plaintiff testified that he filed this suit on the 5th day of March, 1914; that he alleges in his petition—

"that the defendants, since 1912, have used that side track opposite my house and contiguous to my lot to park live locomotives on at night, as many as two or three at the time. * * * They have been standing there, as near as I can get at it, eight or nine months. * * * They stand so close to my house that I can come out of my house * * * and sweep the engines off with a broom; on one occasion an engine came in there and squirted hot water on my gallery. Those locomotives burn oil, and fire is kept up in them, and they make disagreeable noises and smell, and sometimes the oil runs down inside my yard, and stands in puddles there; early in the morning and at other times the burning oil is offensive to the smell; they throw oil up against my house and in the morning when they steam up they shoot oil and water in my yard and kill all my flowers. * * * I did have my house painted, but they have thrown oil on it, and it turned black—the color of the oil."

He also testified that vibrations from the engines makes his house tremble and shakes the glass out of his windows; that ever since July 8, 1913, locomotives have been parked on the side track opposite his house continuously; "* * * that every time an engine comes in it is tied up on this side track for the night." It is admitted that Frank Andrews was appointed receiver of the defendant railway company on the 5th day of July, 1913.

After hearing the pleadings of the parties read, and the testimony adduced, the trial court directed a verdict for the receiver, Frank Andrews.

From the pleading and testimony we reach the conclusion that it is entirely possible and probable that under the charge of the court complained of the jury considered such acts pleaded and testified to, as set out above, which occurred after Frank Andrews was appointed receiver, and therefore such charge constitutes affirmative error, as no recovery can be had against the railway company for damages suffered by plaintiff after its properties passed into the hands and control of Frank Andrews, receiver. Such acts as caused plaintiff's house to leak, the window glass to fall from the windows, the paper on the walls of the house to crack, the paint on the walls of the house to become discolored, and the killing of plaintiff's flowers by oil thrown on them, are such acts, as are alleged and proven, which tend to diminish the permanent value of plaintiff's property,

and as such acts are alleged and proven to be the joint acts of the receiver and said railway company, and as the trial court instructed a verdict for the receiver, as the charge complained of does not limit the liability of the railway company to such damages as occurred prior to the appointment of said receiver, we are of the opinion that it cannot be said that said charge did not probably injure appellant. St. Louis, Brownsville & Mexico Railway Co. v. Dawson, 174 S. W. 850, and authorities there cited.

We overrule appellant's complaint to the second paragraph of the charge complained of. If the definition of the measure of damages given by the court was not technically correct, and the appellant desired a fuller definition, he should have made a request therefor by special charge, and his failure to do so renders his complaint untenable.

[5] The substance of assignments Nos. 5 and 6 is that the evidence is not sufficient to support the verdict and judgment. We think the evidence, which we have hereinbefore set out, amply supports the verdict and judgment, and therefore we overrule said assignments. We have also considered appellant's seventh assignment and overrule the same.

[6] The eighth assignment is as follows:

"The court erred in permitting the attorney for the plaintiff, in his closing argument over the objection of the defendant, to use the following language: 'Gentlemen, you know that the statement of counsel that there was no evidence that authorized the jury to return a verdict for the plaintiff is not well founded, because it filed a motion asking the court to instruct a verdict for the defendant, which was overruled, and the court evidently was of the opinion that there was sufficient evidence to justify a verdict, or he would have granted the motion; and if the court thinks so, you are bound to think so.'"

[7] The argument complained of by this assignment was improper, and should not have been made. The fact that counsel for appellant moved the court for an instructed verdict, and that the court refused same, was not a matter which the jury could properly consider in reaching its verdict. If there was anything said or done by the trial judge in making his ruling in the presence of the jury which was calculated to influence the jury in reaching its verdict against appellant, as counsel in his argument assumes he did, such statement or act would constitute error, and it follows that counsel's argument to the jury as to the fact that the court overruled appellant's motion for a verdict was also error. He evidently believed such argument would influence the jury, or he would not have made it.

[8, 9] As to whether the evidence called for a verdict in favor of appellee was a question for the jury to determine under proper instructions, and counsel should not have told the jury that the court thought that a verdict should be rendered for appellee. We think the language used by counsel must be so construed. But if this was the only error

presented we would not reverse the judgment on that alone, as we think, under the facts proven, the jury could not have found in favor of appellant. And we cannot see that such an argument was calculated to increase the amount found by the jury.

[10] The ninth assignment insists that the judgment rendered is erroneous in that it authorizes the issuance of execution against the property of appellant, although such judgment contains the further clause as follows:

"But * * * no execution shall be levied upon the property of said railway company while in the hands of said receiver."

This may be technical error, but not cause for reversal of the judgment, because if there was no other error demanding a reversal of the judgment rendered, the error here complained of could be corrected by this court.

[11] Any judgment which the plaintiff may recover against the defendant railway company while its properties are in the hands of said receiver should be presented by the plaintiff to the court in which the receivership is pending, as evidence of his claim, and for approval and payment.

For the errors pointed out, the judgment of the trial court is reversed, and the cause remanded.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

