BLOHM et al. v. KRUEGER. (No. 8944.)*

Court of Civil Appeals of Texas. Galveston. May 10, 1927.

Rehearing Denied June 30, 1927.

1. Venue ⊙⇒41—Transfer of cause to another county as to one defendant did not transfer such cause as to other defendants whose plea of privilege was overruled (Rev. St. 1925, art. 1995).

In action for damages for fraudulent sale, transfer of cause to another county as against one defendant did not draw jurisdiction to such county as to other defendants whose plea of privilege was separately overruled, in view of Rev. St. 1925, art. 1995.

2. Fraud ⊙⇒49—One suing for fraudulent sale held required to plead and prove facts showing damages to which he was entitled.

In action for damages for fraudulent sale of a business in which defendant demanded particularization of plaintiff's injury, it was incumbent on plaintiff to plead and prove facts showing necessary amount to which he was entitled.

3. Fraud ⊙⇒49—Allegation of buyer of business seeking damages for fraud held to authorize proof of what he paid.

In action for damages for fraudulent sale of a business, plaintiff's allegation that he paid certain sum for such business, without specifying in what particular form it was paid, held sufficient to let in proof of what he really did pay, which proved to be shares of stock in certain company and promissory notes of himself and another.

4. Fraud ⊙⇒57—Buyer of business seeking damages for fraudulent sale must show reasonable market value of stock and note given in exchange for business.

Where buyer of business seeking damages for fraudulent sale had paid for such business with stock and note, it was necessary to show what reasonable market value of stock and note were, in view of charge that measure of damages was difference between reasonable market value of property parted with and property received.

5. Fraud ⊙⇒47—Allegation of buyer claiming fraudulent sale of business as to "thousands of dollars loss" held insufficient to support verdict for damages.

In action for damages for fraudulent sale of a business, allegation as to "thousands of dollars loss incurred in the operation of the business" held insufficient to support verdict for damages.

6. Fraud ⊙⇒47—Allegation that business bought by plaintiff suffered loss from obligation to redeem inferior goods; sold "under guaranty," held insufficient.

In action for damages for fraudulent sale of a business, allegation as to loss resulting from obligation to redeem inferior goods, sold "under a guaranty," held insufficient to support verdict for damages.

7. Damages ⊙⇒87(2)—Where judgment for actual damages is unsupported, that for exemplary damages cannot stand.

In action for damages, judgment for exemplary damages cannot stand where judgment for actual damages is unsupported.

8. Trial ⊙⇒115(3)—Argument that plea of limitation was unethical held improper.

In action for damages for fraudulent sale of a business in which defendants had entered pleas of limitation, argument indicating that such plea was not ethical held improper.

9. Trial ⊙⇒115(1)—Argument that opponent's objections had been overruled nine times out of ten held improper.

Argument referring to fact that objections of opposite party had been overruled nine times out of ten held improper, since such matter was not for jury's consideration in reaching verdict.

10. Trial ⊙⇒125(4)—In action for damages, argument referring to wealth of defendants held improper.

In action for damages for fraudulent sale of a business, argument repeatedly referring to wealth of one of defendants and his business associates held improper.

11. Trial ⊙⇒124—Argument that opponents were not innocent men or they would not employ attorneys all up and down certain railway between certain towns held proper.

Argument by plaintiff's counsel that defendants were not innocent men or they would not employ attorneys all up and down certain railway between certain towns held improper, especially where statement was unsupported by any evidence and obviously erroneous.

12. Appeal and error ⊙⇒1031(5)—In action for fraudulent sale argument practically ignoring special issues, giving undue prominence to element of fraud, and referring to defendant's wealth held improper to extent that injury will be presumed.

In action for damages for fraudulent sale of a business argument in which special issues submitted were practically ignored, and which gave undue prominence to fact that suit was for fraud and that defendants were wealthy, held improper and so reasonably calculated to prejudice rights of defendants that injury will be presumed.

13. Trial ⊙⇒131(1)—Court held to have duty to interpose on own initiative to stop improper argument of plaintiff's counsel, in action for damages for fraudulent sale.

Where, in action for fraudulent sale, plaintiff's counsel in argument practically ignored

special issues, gave undue prominence to fact that suit was for fraud, referred to defendant's wealth, and indicated that plea of limitation was unethical, court had duty to interpose on his own initiative without awaiting formal exceptions from defendant.

Appeal from District Court, Burleson County; J. B. Price, Judge.

Action by A. G. Krueger against George E. Blohm and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Bowers & Bowers, of Caldwell, Riley Strickland, of Amarillo, and Pearson & Peareson, of Richmond, for appellants.

W. M. Hilliard, of Caldwell, and C. G. Krueger, of Bellville, for appellee.

GRAVES, J. Pursuant to a jury's verdict on special issues and to stated additional findings of fact by the court, judgment for $13,000 was entered herein against appellants in favor of appellee as damages—$6,750 of it actual, and $6,250 exemplary—for the alleged fraudulent sale by them to him of the Republic Tire Company, a corporate concern, of Houston, Tex.; the fraud charged and found by the court and jury to have existed consisted, in general effect, of appellants' having so misrepresented and concealed the actual condition of the business as to have induced its purchase by appellee for more than it was worth, and to have been perpetrated in such a way as to also entitle him to the punitory recovery.

Appellants assail the judgment on many grounds, filing records, briefs, and arguments of such length as to entail inescapable drudgery upon the members of this tribunal; reduced to their ultimate effect, however, these simply assert, first, that the court had lost jurisdiction over them in consequence of having theretofore sustained the plea of privilege of an original codefendant with them, Waugh, to be sued in Harris county, and, second, that the pleadings and evidence were insufficient to support either class of damages allowed.

[1] The trial court at preceding terms had not only sustained the plea of privilege of Waugh that forms the sole basis for the present claim for no jurisdiction against his original codefendants in the litigation, the appellants here, but had also separately overruled like' individual pleas from the latter themselves, and all these orders were affirmed on appeals to this court, as reported in the cases of Krueger v. Waugh, 261 S. W. 196, and Ulrich et al. v. Krueger, 272 S. W. 824; the common theory throughout those causes of all three such original codefendants, as indeed it was of this court's opinions disposing of them, was that each of the parties separately was entitled to be sued in the county of his residence upon this same cause of action unless and until he was individually shown to be answerable elsewhere thereon, under some one of the exceptions to the general venue statute (R. S. article 1995); that theory is inconsistent with and, we think, overrides the argument that the transfer to Harris county as against Waugh drew the jurisdiction there as against appellants, too; being unconvinced of error in its application before, the present plea to the jurisdiction is overruled without further discussion.

The second presentment reaches the merits of the controversy. Appellee particularly averred that the tire company as a going enterprise at Houston—including its other assets and stock on hand—had been with intentional falsity represented to him by appellants both verbally and by a certain written statement of its financial condition dated August 30, 1920, which they presented to him in Burleson county, as having a net worth of $48,500. When in fact it was not worth above liabilities over $30,500; that he bought the business in reliance on these statements on September 20, 1920, and paid the $48,500 for it, thereby losing the $18,000 difference between its actual and represented values, which resulting sum he sought the recovery of as damages; that, contrary to what these statements reflected, losses had been incurred *in the operation* of the business, and its real worth at the time of his purchase reduced below the represented value in these respects: First, by thousands of dollars of loss so incurred when conducted on Main street, in Houston; second, by about $12,600 more after it moved during June or July, 1920, to Fannin and Dallas streets, in that city, through a special sale of over $38,000 worth of its stock of tires, tubes, etc., at a 33⅓ per cent. discount below cost or wholesale price, all of which goods were sold under a guaranty; third, by $6,000 or more as a result of having to redeem many thousands of dollars worth of inferior goods, with which it had restocked its business after the 33⅓ per cent. discount sale just referred to, and which it had sold under the same guaranty.

Further charges were that this written statement had been padded so as to make it appear that the company had more goods and stock on hand than it did have, in that it did not reflect any of the infirmities referred to.

The count for exemplary damages alleges in detail that appellants combined and confederated together to mislead appellee to his injury, and "that by reason of the false and fraudulent representations made to him by the defendants as aforesaid, with a view and for the purpose of defrauding, cheating, and swindling him, he is entitled to exemplary damages in the sum of $15,000."

Since the suit was exclusively one to recover the specified damages claimed to have flowed from the alleged fraudulent sale, and not for rescission thereof, this résumé of

appellee's pleadings has been confined accordingly, no attempt having been made to restate the mere matters of fraudulent inducement to the sale otherwise declared upon.

The special issues elicited findings favorable to the appellee upon all the matters thus pleaded by him, except that the special sale at the 33⅓ per cent. discount was found not to have resulted in a loss to the tire company, and his damages were fixed at $6,750 actual and $6,250 exemplary, as before stated, instead of the $18,000 and $15,000 claimed.

In our opinion, there was sufficient evidence to sustain this finding that no loss resulted to the business from this special sale, hence that item as a basis for damage must be eliminated.

Neither do the pleadings nor proof sustain any of the others, we think.

[2] Had the action been for rescission, a general averment and showing that the condition and worth of the business was not in material respects what it had been fraudulently misrepresented to be, and that a justified reliance upon such representation had been the sole inducement of a purchase that would not otherwise have been made, would have entitled the buyer to nullification, without the necessity of pleading and proving specifically just how much and in what detail he had been, injured; but, since the contract was alleged to have been performed on both sides and monetary damage alone is sought as the consequence of the the fraud, the opposite party having demanded the particularization both by special exceptions to the pleadings and objections to the sufficiency of the evidence, it was incumbent upon the appellee to both plead and prove the facts necessary to show the amount to which he was entitled. George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456; Medley v. Lamb (Tex. Civ. App.) 223 S. W. 1048, and cited authorities.

The court charged the jury upon the actual loss alleged to have been sustained:

"The measure of actual damages, if any, is the difference between the reasonable market value on the day that the trade was consummated, of the property which the plaintiff parted with, and the reasonable market value of the property which he received from the defendants."

This accords with the rule laid down by our Supreme Court in the Hesse Case, and its applicability is not questioned by the appellee here.

[3, 4] We think appellee's allegation that he paid $48,500 for the tire company, without specifying in what particular form that was paid, was sufficient to let in proof of what he really did pay; the undisputed evidence showed that what he parted with was 133 shares of stock of the Caldwell Oil Mill Company and the promissory note of himself and appellant Blohm for $36,000; under the court's quoted charge, it was therefore necessary to show what the reasonable market value of this stock and note were on the day the trade was consummated, and we are not satisfied with the state of the proof upon that feature; in view of a reversal, however, it is not deemed necessary to now treat the matter in detail.

Recurring to the items of damage declared upon that must have been the basis of the verdict:

[5] 1. There is neither such pleading nor proof as furnishes any criterion of what the generally charged "thousands of dollars loss incurred in the operation of the business on Main street" consisted of or amounted to; accordingly, it, too, must be left out.

[6] 2. As concerns the $6,000 loss claimed to have resulted from the obligation to redeem inferior goods sold "under a guaranty," there is likewise wanting either pleading or proof from which it could be determined just what the alleged guaranty was, how many goods were sold under it, and at what price; consequently, there obviously was no means afforded on that count for a recovery of any amount.

[7] It follows that the judgment for actual damages was unsupported, and without it that for exemplary damages cannot stand either. Thouron v. Skirvin, 57 Tex. Civ. App. 105, 122 S. W. 55, and authorities therein cited; Flannery v. Wood, 32 Tex. Civ. App. 250, 73 S. W. 1072; Masterson v. Cline (Tex. Civ. App.) 264 S. W. 204; Brooks v. Long (Tex. Civ. App.) 199 S. W. 510.

In the state of the record as presented here, the most that can be said is that the evidence tended to show that some loss had occurred in the operation of the business, and that the written statement furnished to the appellee did not truthfully reflect the tire company's real condition at that time; that might have been sufficient, had the appellee only sought to be put back in statu quo, but in this action for damages, it was necessary to go further and show what the extent of his loss from the fraud had been; this he failed to do.

For another reason the recovery cannot be permitted to stand. The argument of counsel for appellee to the jury was improper and prejudicial, so plainly so that we deem it unnecessary to set it out here in hæc verbis or detail, and only state the purport of some of its more objectionable features.

[8] (1) It referred to the pleas of limitation contained in the answers of appellants, which were not in evidence before the jury, as "confessions of fraud and guilt," adding that "Defendants after stealing plaintiff's money say now, 'Because we have had it two years, you ought to let us keep it'—that's Houston practice, not country town practice." The law conferred the right to so plead upon these litigants, and such characterization of their exercise of it transcended the bounds

of propriety. Railway v. Loftis (Tex. Civ. App.) 168 S. W. 404.

[9] (2) It informed the jury with reference to legitimate objections made to the proceedings by appellants' counsel:

"You know whether the court sustained them in their objection, or if he overruled them, about nine times out of ten, as the record will show. The gentlemen are fair; you heard the court time and again tell the two gentlemen from Sugar Land and Richmond that they were wrong, and you heard them persist and persist, and continue to persist before the jury, the things the court had told them should not come before the jury."

The fact that the court may have overruled opposing attorneys nine times out of ten in their objections was not a matter the jury could properly consider in reaching its verdict. Railway v. Green (Tex. Civ. App.) 183 S. W. 829.

[10] (3) It repeatedly referred to the wealth of one of the appellants and his business associates, in comparison with the pictured poverty and bankruptcy of the appellee in consequence of this transaction with them, dubbing him as "the moneyed vulture of high finance." These persistent references constituted reversible error. First National Bank v. Porter (Tex. Civ. App.) 204 S. W. 463; Stark v. Brown (Tex. Civ. App.) 193 S. W. 716; Home Life & Accident Co. v. Jordan (Tex. Civ. App.) 231 S. W. 802; Houston Ice & Brewing Co. v. Harlan (Tex. Civ. App.) 212 S. W. 779; Western Indemnity Co. v. MacKechnie (Tex. Civ. App.) 214 S. W. 456.

[11] (4) It asserted that appellants were not innocent men, that if they were, they would not employ attorneys all up and down the Santa Fé Railway, from Houston to Caldwell, thereby volunteering a statement not only unsupported by any evidence in the case, but obviously erroneous, since there were many towns between the two designated ones without representation upon the panel of appellants' able and high class counsel.

[12] (5) Throughout a long address, in which the special issues submitted were practically ignored, by repeated recitations to that effect, it gave undue promise to the fact that the suit was one for fraud, those sued and their business associates being all persistently referred to as defrauders, and some of them as millionaires; for instance, this was said in derisive reference to them:

"I am talking about honest men, fair men, your two or three millionaires people should bow down to. They are no more in God's plan than a flea tick, and really don't smell any better either."

Other like statements were:

"They come with all desperation and falsity, by rascality and dishonorable conduct robbed —— and family of every dollar he had of his property and made him virtually bankrupt. They did that, gentlemen of the jury, and now for two years our big rich men have had it, and you cannot get it back again. That is the Houston practice; that is not the country town practice. * * * Why, my God, is it that —— by crooked methods can be a millionaire, and there is plain men and women ready to bow down and worship him if he is the man who robs —— and family, who always lived honorable and right though they lost the little amount saved up."

It would be a work of supererogation to have this judicial record reflect more of this unfortunate deliverance; it was indulged in without rebuke from the trial court, and in its being so imposed upon the jury, both court and counsel erred; that it was reasonably calculated to prejudice the rights of opposing parties, under all the facts and circumstances, is self-evident, and in such instances injury will be presumed. Emberlin v. Railway Co. (Tex. Com. App.) 284 S. W. 539.

[13] In appellee's brief, as indeed in some of the qualifications to bills of exception, the suggestion is made that much of this argument was provoked by that of appellants' counsel and was not excepted to when made; a sufficient answer lies in the plainly obvious conclusion that no opposing argument could properly in a court of justice invite one of such inflammatory character as that here condemned, and that it was not, in such circumstances, the privilege of the presiding judge to await formal exceptions from the other side, but his duty to interpose upon his own initiative. Willis v. McNeil, 57 Tex. 465; Home, etc., Co. v. Jordan (Tex. Civ. App.) 231 S. W. 802; Railway v. Greenlee, 70 Tex. 553, 8 S. W. 129; Vogt v. Guidry (Tex. Civ. App.) 229 S. W. 656; Davis v. Hill (Tex. Civ. App.) 271 S. W. 281.

From these conclusions it follows that the judgment should be reversed and the cause remanded; that order has been entered.

Reversed and remanded.

### On Motion for Rehearing.

Some inaccuracies of statement, not affecting the correctness of our former judgment, have been pointed out; the statement on page 4 of the opinion in reference to the findings of the jury, other than upon special issue No. 10, "Neither do the pleadings or proof sustain any of the others, we think," was meant to apply only to those findings of losses in the operation of the business relied upon as showing the damages recovered for, as the same are epitomized at the top of page 3 of the opinion; it should be so confined, the ensuing context plainly showing that such alone was the idea in the mind of this court. It became unnecessary, under the view taken of the legal effect of the finding thus made, to state specific ones upon all the numerous other answers of the jury, hence that was not done.

This declaration concerning the criticized argument of appellee's counsel, "That it was reasonably calculated to prejudice the rights of opposing parties, under all the facts and circumstances, is self-evident, and in such instances injury will be presumed," has been by them misconstrued; obviously, being specifically restricted to the facts of this case, it should not be understood as declaring generally that injury will always be presumed to flow from improper argument, no matter what countervailing conditions otherwise may appear.

The motion for rehearing under accompanying oral and written arguments from able counsel on both sides, has been most carefully considered, but, being unconvinced of error in the original disposition of the appeal, it must be adhered to; there is plainly no evidence of any probative force either that the tire company was only worth at the time of this purchase $30,500, or as to what was then the market value of the $36,000 note given in part payment therefor; in person upon this trial the witness McNally, on whom alone appellee relies for proof of this deficiency in the value of the business, stated that he did not in his testimony by deposition, in fixing the value of the tire company, take into account the value of its bills receivable—that the only thing he considered was the equipment, machinery, and stock. Neither was their amount or value otherwise shown. Upon the other hand, the testimony of appellant Ulrich tended to indicate that their value was about $12,722.22.

The motion will be overruled.

Overruled.