PECOS & NORTHERN TEXAS RAILWAY COMPANY v. LEE BIVINS
ET AL.

Decided May 14, 1910.

**1.—Carrier—Live Stock—Delay in Furnishing Cars—Measure of Damages.**

Whether cattle are intended for immediate sale upon the market, or for feeding at destination and later sale, the measure of damages for failure of a railroad company to furnish cars for their transportation as per contract, is the same, viz.: the difference in value of the cattle at the immediate destination.

**2.—Same—Contributory Negligence.**

Pleading and evidence reviewed and held sufficient to render it reversible error for the trial court to refuse to submit to the jury the issue of contributory negligence on the part of a shipper of cattle in driving his cattle to a railroad station when he knew that it was doubtful about the cars being there, and where he knew the water and pasturage were bad, instead of holding the cattle in better available pastures until assured of the arrival of the cars.

Appeal from the District Court of Potter County. Tried below before Hon. J. N. Browning.

*Terry, Cavin & Mills* and *Madden, Trulove & Kimbrough,* for appellants.—If the cattle were injured by being held at Pecos awaiting the arrival of cars, the appellee, Avery, was solely and absolutely responsible for such injuries. Texas Central R. Co. v. O'Laughlin, 72 S. W., 610; Texas & P. R. Co. v. Edins, 36 Texas Civ. App., 639; Fort Worth & D. C. Ry. Co. v. Daggett, 87 Texas, 322.

The measure of damage for delay at point of origin, in a shipment of cattle not for immediate market but for further grazing or feeding before marketing, is the difference in the value of the cattle at the place where the delay occurred, at the time and in the condition they should have been received and shipped, and their value at the time and in the condition they were in fact received and shipped. Galveston, H. & S. A. Ry. Co. v. Thompson, 44 S. W., 8; Houston Cot-

ton Oil Co. v. Trammell, 72 S. W., 244; Gulf, C. & S. F. Ry. Co. v. Hume, 87 Texas, 211.

The court erred in failing and refusing to give any charge to the jury upon the effect of the contributory negligence of the plaintiffs. International & G. N. R. Co. v. Neff, 87 Texas, 307, citing Galveston, H. & S. F. Ry. Co. v. Bracken, 59 Texas, 71; International & G. N. R. Co. v. Graves, 59 Texas, 330; St. Louis & S. F. Ry. Co. v. Traweek, 84 Texas, 73; Martin v. Texas & P. Ry. Co., 87 Texas, 117; Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Texas, 470; Aggs v. Shackelford, 85 Texas, 149; Brandon v. Gulf City Mfg. Co., 51 Texas, 121, 128; Cooper v. Dallas, 83 Texas, 242; Austin & N. W. Ry. Co. v. Anderson, 85 Texas, 90.

*Hendricks & Boyce, Gustavus, Bowman & Jackson* and *Thos. F. Turner,* for appellee.—Where the carrier has breached its duty with reference to the transportation of property and damages have resulted, the measure of damages is the difference between the market value of the property in the condition in which it would have arrived but for the negligence of the defendant, and its market value in the condition in which, by reason of the negligence of the defendant, it did arrive; and this is true, although the property is not being shipped to market. Missouri, K. & T. Ry. Co. v. Kyser & Sutherland, 38 Texas Civ. App., 355; Ft. Worth & Rio Grande Ry. Co.. v. Word, 111 S. W., 754; Gulf, C. & S. F. Ry. Co. v. Stanley, 3 S. W., 111.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment in favor of the appellees for the sum of four thousand, five hundred and sixty-nine dollars, and thirty-two cents damages and interest claimed for injuries to appellees' cattle, because of the failure to furnish cars at Pecos, Texas, on May 1, 1907.

The cattle were gathered near Marfa, some one hundred miles south of Pecos, and then driven to Pecos by appellees, where they arrived on the evening of April 30th. The cars were not furnished on the next day, as appellees alleged appellant had contracted to do, but arrived on the 7th and 8th days of May following, at which several times the cattle were loaded and transported to Amarillo, Texas, as was originally intended, for the purpose of grazing and later sale.

There were some averments of damage during the transportation, but this issue was not submitted, so that the verdict and judgment rest upon the evidence of damages pending the delay at Pecos from the evening of April 30th until May 7th and 8th. Appellees' evidence tended to show that during this period it became necessary to confine the cattle in pastures having "salt grass" and alkali water, which resulted in great damage to the cattle eating the grass and drinking the water.

In the third paragraph of the court's charge, the jury were instructed that in event they found for plaintiff, the "damages would be determined by the difference, if any, in the market value of said cattle at Amarillo, Texas, at the time they arrived at Amarillo in the condition they were in upon their arrival, and what their condition

would have been, if different, had they not been so delayed at Pecos, Texas, but had been transported to Amarillo without such delay; and such market value would be determined by ascertaining from the evidence, if any, as to what such market value would have been at Amarillo, upon their arrival in the condition, and at the time they would have arrived but for such delay, if any."

The charge is, perhaps, inartistic in some particulars, but must be sustained, we think, on the point at which it is most vigorously assailed. Appellant insists that inasmuch as the cattle were not intended for immediate sale upon the market at Amarillo, the measure of damages was not as given by the court, but the difference in the value of the cattle at Pecos, Texas, at the time and in the condition in which they arrived at Pecos, and at the time and in the condition they were when actually delivered to the railway company for transportation; and the cases of Texas & P. Ry. Co. v. Moore, 119 S. W., 701, and Galveston, H. & S. A. Ry. Co. v. Thompson, 44 S. W., 9, are cited in support of the contention. We hardly think the case of Railway v. Moore sustains the contention, and the case of G. H. & S. A. Ry. Co. v. Thompson, which seems to support appellant's view, is based upon Gulf, C. & S. F. Railway Co. v. Hume, 87 Texas, 211, which, as we think, properly construed, supports the rule given in the court's charge.

In the case of Ft. Worth & R. G. Ry. Co. v. Word, 111 S. W., 753, we had occasion to examine the question carefully, and, citing numerous authorities, there said: "That no distinction in the rule for the measure of damages is made between cattle negligently injured in transportation shipped to market for immediate sale, and these intended for grazing and later sale." To the same effect we think is the case of Missouri, K. & T. Ry. Co. of Texas v. Kyser & Sutherland, 38 Texas Civ. App., 355, (87 S. W., 389), by the Court of Civil Appeals for the Third District, in which writ of error was refused by the Supreme Court.

The proof in this case, however, shows that at the time appellees drove their cattle into Pecos, they were not then actually tendered to the company for shipment, but driven on to nearby pastures for the purpose of holding until cars should arrive, the absence of the cars having been ascertained prior to this time, and appellant insists that this fact distinguishes the case from that of Railway v. Word above cited, where the injuries to the cattle occurred during the transportation. But we do not think the fact mentioned sufficient reason for changing the rule for the measure of damages as we have indicated it should be. In the case of Railway v. Kyser & Sutherland, *supra,* it is said that "the gist of the plaintiffs' action was the breach of a contract to furnish cars for the shipment of certain cattle from Waggoner, Ind. T., to Marlin, Texas," and the opinion gives no indication of damages arising to the cattle during transportation. Nevertheless, the court states that: "While the cattle were not intended to be placed upon the market as soon as they reached their destination, but were shipped there for the purpose of feeding them preparatory to placing them upon the market, we hold that the difference in the market value at Marlin was the correct measure of damages." It is un

disputed that appellees gathered and drove their cattle to Pecos for the purpose of shipment to Amarillo and that the shipment was subsequently made as contemplated. In such a case, it seems to us that it can make no difference in the measure of damages whether the injuries to the cattle arose while actually awaiting cars, or during the transportation, provided, of course, the delay was attributable to negligence or a breach of contract on the part of the transporting company. In either case the actual loss to the shipper is the lessened market value of his property, at the time and place of arrival at destination. Such rule seems more certainly to exclude speculative considerations and attain just compensation for the injuries sustained, which is the object of the law.

Appellant assigns error to the court's refusal to give the following special charge:

"Gentlemen of the jury: If you believe from the evidence that the plaintiffs made a contract with H. Parmer to furnish cars for the shipment of the cattle in question at Pecos, Texas, on the 1st day of May, 1907, and that said Parmer was authorized to bind defendants in such contract, and that defendants failed to furnish said cars until the 7th and 8th days of May, 1907, and if you further believe that plaintiff brought said cattle to Pecos and held them in pasture near Pecos, until said cars were furnished; and if you further believe that said cattle were pastured on salt grass and were allowed to drink more or less alkali water, and that they were injured thereby, yet, if you further believe that the said plaintiffs, or either of them were negligent in not providing for said cattle better pasturage or better water, while holding them awaiting cars, and that said injuries were proximately caused by such negligence, then the plaintiffs can not recover for such injuries to said cattle. By the term of negligence, as used in this charge, is meant the lack or want of such care as an ordinarily prudent person would have used, under the same or similar circumstances."

We think this assignment must be sustained. There was evidence tending to show that all parties knew, because of the numerous orders for cars and other conditions, it was uncertain just when the cars demanded in this case could be delivered at Pecos; that Mr. Avery, one of the appellees, who personally gathered the cattle and conducted the shipment, knew of the conditions at Pecos with respect to the grass and water, and immediately before starting to Marfa to gather the cattle, explained to Mr. Parmer, appellant's agent, through whom it was alleged the contract for cars was made, the damage that would result to the cattle in event he should be required to hold them at Pecos awaiting cars, and arranged with Parmer for an answer to a telegram in event the cars had not arrived when he was ready to start from Marfa; Mr. Avery also testified to the effect that he had made arrangements with McCutcheon Bros., some fifty miles out from Pecos, for holding the cattle there in case he could not get cars promptly at Pecos; that when ready to start from Marfa he wired Parmer of that fact, but receiving no answer, he drove his cattle on toward Pecos, arriving at the Riggs' pasture some twenty miles from Pecos, about April 28th; that thus far there had been neither salt grass nor alkali

water; that on the morning of April 29th he left the cattle and rode into Pecos in advance, reaching there the same day and found the cars had not arrived; that he wired Mr. Turner, the manager of the railway company, saying that there was neither grass nor water at Pecos, and that he would suffer loss; that he received a wire from Mr. Turner stating that there were so many orders for cars ahead of his that he, Turner, could not estimate when the cattle could be loaded, adding: "Better get the cattle back on range where you can hold them until cars are in." Parmer testified to the effect that when Avery came to his office stating that he would go to Marfa to receive his cattle, and wanting assurance from the witness that cars would be at Pecos by the first of May, that he told him it would be impossible to give him any such assurance; that after talking the matter over some time witness declined to make any promise one way or the other about it, instructing Avery not to bring his cattle into Pecos until he knew that the cars would be there for him to load in; that witness suggested that Mr. Avery should send a man into Pecos two or three days ahead of the cattle, and hold them where there was grass and water until he could learn with certainty when the cars would be there; that Mr. Avery then proposed to witness that when Avery got to Marfa he should wire witness; that witness told him he did not think he would have any more to say at that time, than at the time they were talking, but that if witness had any further information to give when he wired he would give it, but he did not expect to have any more.

The rule is quite familiar that if there be any evidence tending to support an issue, it is the duty of the court to submit it. We think the evidence above briefly referred to at least sufficient to raise the issue of Avery's contributory negligence in a failure to hold his cattle either at McCutcheon's or Riggs' pasture, where there was neither alkali water nor salt grass, until he had greater assurance of the arrival of the cars in which he intended to ship his cattle. True, Avery's testimony tends to show that he exercised ordinary care in this respect under the circumstances, but in passing on the question presented it is our duty to accept the evidence most favorable to appellant, and so construing it, we think, as stated, that the evidence presented the issue and that the court should have submitted it to the jury.

Appellee insists that the assignment presenting the question is insufficient and that there was no plea of contributory negligence pointed out. The assignment, however, we think sufficient under the recent case of Louisiana & T. Lbr. Co. v. Kennedy, 103 Texas, 297. It was stated by appellant in the preliminary statement of the case that the plea of contributory negligence was presented, and by reference to the record we find such plea. The plea seems quite general, but there is no exception to it and we therefore do not feel authorized to deny appellant the benefit of the issue of contributory negligence so presented by the pleading and evidence.

There are numerous other assignments, but many of them are rendered immaterial by the foregoing conclusion, and in those remaining, no error is pointed out of which appellant can complain. For the error of the court, however, in refusing to submit the issue of con-

tributory negligence the judgment will be reversed and the cause remanded.

*Reversed and remanded.*