**MASTERSON v. CLINE et al.   (No. 9145.)**

(Court of Civil Appeals of Texas. Dallas. June 14, 1924.)

**1. Appeal and error ⚖═925(1)—Appellate court will presume that special exceptions waived where record discloses no ruling thereon.**

Where record fails to disclose any ruling on exceptions contained in pleadings, appellate court will presume that they were waived.

**2. Bills and notes ⚖═537(6)—Whether plaintiff purchased note bona fide held for jury.**

In an action on a note, whether plaintiff purchased note bona fide held for jury.

**3. Partnership ⚖═218(3) — Whether plaintiff and payee of note were partners held for jury.**

In an action on a note, whether plaintiff and payee thereof were partners in a transaction to defraud defendant held for jury.

**4. Partnership ⚖═44—Burden of proof as to partnership between parties held to rest on defendant.**

In an action on a note which was defended on ground of fraud on the part of both plaintiff and payee as partners, burden of proof that payee and plaintiff where partners rested on defendant.

**5. Damages ⚖═87(2)—Actual damages must be recoverable before jury can award exemplary damages.**

Before exemplary damages may be awarded, actual damages must be recoverable.

**6. Jury ⚖═34(3)—Invasion of right of jury trial amounts to a denial thereof.**

An invasion of the right of trial by jury by instruction withdrawing material issues amounts to a denial thereof.

**7. Vendor and purchaser ⚖═315(2)—Deed conveying land to defendant held admissible in evidence.**

In action on note for part of price of land, deed from third person conveying premises to defendant was admissible in evidence to show that one of objections made to abstract of title had been removed and that vendor was able to comply with contract.

**8. Vendor and purchaser ⚖═315(2)—Vendor's agent's steps to perfect title to property sold to purchaser held admissible.**

In action on note for part of price of land which was defended on the ground of fraud and failure to furnish a merchantable title, evidence tending to show that vendor's agent had taken necessary steps to perfect title was relevant.

**9. Trial ⚖═85—Objection to portion of evidence properly admissible, improperly sustained where no objection taken to inadmissible portion.**

Where evidence was admissible in part and objection urged was addressed only to a portion properly admissible and no objection was urged to inadmissible portion, court erred in sustaining same.

Error from District Court, Dallas County; E. B. Muse, Judge.

Action by N. T. Masterson against T. S. Cline and F. Z. Bishop, in which first defendant filed cross-action. Judgment for first defendant on his cross-action against plaintiff and second defendant, and plaintiff brings error. Reversed and remanded.

Elliott Cage, of Houston, and Jeff D. Stinson, of Dallas, for plaintiff in error.

───────────────────────────────
⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Henry P. Edwards and Geo. Clifton Edwards, both of Dallas, for defendants in error.

VAUGHAN, J.  This was a suit instituted by N. T. Masterson, who sued T. S. Cline as maker, and F. Z. Bishop as payee and indorser, on a note for $1,000. F. Z. Bishop filed only a general demurrer and general denial. T. S. Cline pleaded failure of consideration, fraud, conversion, notice, actual and constructive on Masterson's part, that Bishop was Masterson's agent, and that all the transaction was for Masterson's benefit; and, further, that the entire transaction, the alleged contract and fraud and conversion by which Bishop had secured the note sued on and the check for $1,000 drawn by Cline and payable to Bishop, or order, were fully ratified, confirmed, and made his own by Masterson; and that the acts and deeds of Bishop and Masterson were wrongful, fraudulent, and malicious, and made them liable for exemplary damages. In all of these respects, Cline, by his amended answer and cross-action, substantially alleged that, on or about the 3d day of September, 1920, the date of the alleged promissory note sued upon, Masterson and Bishop were jointly and severally, as individuals and as partners, operating and conducting a business of selling Rio Grande Valley land situated in Cameron county, Tex., which lands were sold by Bishop for himself, and as agent for the use and benefit of Masterson; that while said business was operated by F. Z. Bishop, the real and true owner was N. T. Masterson; that on said date Bishop, through the false, fraudulent, and deceitful representations and promises of himself and his agent and employees, acting for themselves and as agents and employees of Masterson, within the scope of their employment and the conduct of Masterson's said business, induced Cline to sign the note sued on and to pay the sum of $1,000, all of which was done for the use and benefit of Masterson; that Cline was induced and persuaded to execute said note and to part with said $1,000 cash through the false, fraudulent, and deceitful representations of Bishop, his agents and employees, acting for themselves as well as for Masterson, as partners and as individuals, in accordance with the deceitful and fraudulent scheme to swindle Cline out of a large sum of money, in that said Masterson and Bishop and his agents and employees, acting for themselves, jointly and as partners and as individuals, asserted, advertised, and published that Bishop was the owner of a large amount of land in Cameron county, Tex., which said parties claimed was unusually fertile and valuable, and, for the purpose of swindling and defrauding innocent persons and this defendant, they organized a touring party to visit the land offered for sale, said visit to be made entirely at the expense of Masterson and Bishop, to the town of Harlingen, Tex., in said county, where they swindled, hoodwinked, overreached, deceived, and induced Cline to sign a most unusual and unfair and unreasonable purchase instrument in writing, which was not a contract but a mere swindling device by which Bishop, acting for himself, individually, and as agent of Masterson, contracted to sell said Cline ten acres of land at the purchase price of $4,000, and contracted to convey the ten acres of land therein described to Cline by a good and sufficient warranty deed and to furnish him with an abstract of title showing a good and merchantable title to said land; that Bishop was not the owner of said ten acres of land so contracted to be conveyed to said Cline; that he was not furnished with an abstract showing a good and merchantable title to said property; that all representations made as aforesaid were false and fraudulent and were known to be at the time they were made, and that the falsity of same was not known to Cline; that he had a right to, and did, rely upon the truth of said representations so made; that said note and contract and the acts and deeds of said Masterson and Bishop constituted a fraud and swindle and securing of Cline's money under false pretenses and a conversion of said money to the use and benefit of said Masterson and Bishop, and that said acts and deeds were, and are, a wrong connected with, but not dependent upon, said alleged contract, which wrong was committed jointly and separately by Masterson and said Bishop and was approved, ratified, and indorsed in full by said Masterson and Bishop from the beginning; that said wrongs complained of were committed with the malicious design to injure said Cline by appropriating to their own use $1,000 in cash and the note sued on for $1,000; that said wrongs were committed by means of representations that were knowingly, maliciously, and fraudulently false; that said contract and note were a fraudulent scheme and device between said Masterson and said Bishop by which to obtain possession of Cline's money and the note sued on.

Cline prayed for cancellation of the $1,000 note sued on, cancellation of the alleged contract on which the note and the $1,000 check had been secured, damages in the sum of $1,000 because of the conversion of that amount in the check, which was cashed by Masterson, and exemplary damages in the sum of $5,000.

Bishop answered said cross-action by general demurrer and general denial. Masterson answered thereto by general and special exception, the special exception only amounting to a general exception addressed to a particular portion of said cross-action, and, by way of special answer, made the following allegations: He denied that he operated

a business in the name of F. Z. Bishop, or that he was represented by F. Z. Bishop or G. O. Newman, or that he ' conspired to, or did, defraud Cline out of anything whatever ; that all allegations to that effect were totally false, were known to be false at the time they were made, and were willfully and maliciously made, without any foundation in fact, and denied under oath that any partnership existed between him and Bishop or between him and Newman in this transaction or any other transactions, or that any such partnership had ever existed ; that he had no interest whatever in the land described in the contract with Cline and had nothing to do with nor any interest in the negotiations between Cline and Bishop or Cline and Newman ; that at the time of his purchase of the note sued on, he had no knowledge or notice of any of the matters alleged by Cline as a defense to said note ; that he purchased said note in good faith, in due course of trade before maturity, and paid a valuable consideration therefor, and was an innocent purchaser for value of said note ; that he bought said note relying upon the recitals therein and believing same to be a valid and binding obligation upon said Cline as recited in said note ; that he would not have purchased said note if he had not relied upon its being a binding obligation upon said Cline.

[1] The record does not disclose any ruling on the exceptions contained in pleadings of plaintiff in error ; therefore we are to presume that same were waived. However, in view of another trial, we feel constrained to say it is probable that the pleadings to which said exceptions were addressed were subject thereto.

Trial in the court below resulted in a verdict in favor of Cline, on which a judgment was rendered in his favor against N. T. Masterson and F. Z. Bishop canceling the note sued on, the contract for the purchase of ten acres of land, and for the sum of $1,000 as actual damages with interest thereon at the rate of 6 per cent. per annum from September 3, 1920, and the further sum of $5,000 as exemplary damages and all costs of suit. From this judgment plaintiff in error, N. T. Masterson, alone, has perfected his appeal, which must be sustained because of the following vital errors.

[2-4] At the conclusion of the introduction of evidence, the trial court instructed the jury, in part, as follows:

"You will return a verdict in favor of the defendant T. S. Cline against the plaintiff N. T. Masterson and the defendant F. Z. Bishop for the cancellation of the $1,000 note sued upon herein, and for the sum of $1,000 plus interest thereon at the rate of 6 per cent. per annum from September 3, 1920."

And, in addition thereto, submitted the issues presented by the pleadings and evidence as to exemplary damages in the form of special issues, in which the court assumed the right of Cline to recover such damages by reason of the quoted instructions given. This was error, as said instructions withdrew from the jury the material issues presented by the pleadings of plaintiff in error in answer to the cross-action of defendant in error Cline above set out, in support of which there was ample evidence introduced requiring the submission of same to the determination of the jury, to wit, plaintiff in error testified as follows:

"I have never been engaged in the land business with F. Z. Bishop. At the time that Mr. Bishop and Mr. Cline signed this contract, the property involved in that contract was not owned by me, and I had no interest in it. At the time that contract was entered into, I had never seen or heard of Mr. Cline. I never saw him until this morning. I was in Highlands, N. C., at the time that contract was signed. I did not know anything about the entering into of the contract until several days later I went to San Antonio and bought some notes of Mr. Bishop at that time, and Mr. Cline's note was among them. I paid Mr. Bishop for the Cline note. At the time I purchased the notes from Mr. Bishop, I knew of no reason why the note should not be paid, or why Mr. Bishop had no right to sell it. After I purchased the note, I wrote Mr. Cline a letter stating that I owned the note and when the note became due I drew a draft on Mr. Cline for the amount of it and attached the note to the draft. I did not write any letter to the bank in regard to the draft. I never send any letter to the bank with drafts. I just put the draft on the note and put it in the collection department. I did not deposit that note and draft in the mail. I just put it in the bank, and it was never paid.

"At the time of the sale of this land to Mr. Cline, Mr. Bishop was not representing me in selling any lands. I had nothing to do with inducing Mr. Cline to sign either the contract or note. I had never seen Mr. Cline and did not know when he went to the valley. I was not even in the state at the time the note was signed. At the time this contract between Mr. Bishop and Mr. Cline was signed, I was lending Mr. Bishop money and buying notes from him. I had previously to that time sold him some land. He was indebted to me at the date of the transaction. ' Mr. Cline never requested me before I purchased this note to remove any objections to the title of this land. I bought the note four or five days after it was signed by Mr. Cline."

This certainly was ample evidence upon the issue as to the bona fide purchase of the note by Masterson to require the submission of that issue to the determination of the jury. Wallace v. Southern Cotton Oil Co., 91 Tex. 18, 40 S. W. 399. And also on the issue as to whether or not Masterson and Bishop were partners as alleged by defendant in error Cline, specially so as the burden of proof on that issue rested upon Cline. Patterson v. City of Austin (Tex. Civ. App.) 29 S. W. 1139 ;

Harpold v. Moss, 101 Tex. 540, 109 S. W. 928; Pecos Ry. Co. v. Bivins, 61 Tex. Civ. App. 170, 130 S. W. 210.

[5] The remainder of the court's charge, being of necessity based upon this paragraph, was erroneous, as same was tainted with the vice prevalent therein; it being necessary for defendant in error to recover actual damages before the jury would be authorized to award him exemplary damages in any sum.

[6] The right of trial by jury thus invaded amounted to a denial of this inestimable right, guaranteed to litigants by the organic law of the land, by which a fair and impartial legal trial, according to the established forms of law, is guaranteed to all persons alike, and without the observance of which it cannot be said that the litigant prejudiced thereby has had his day in court.

[7] Plaintiff in error offered in evidence a general warranty deed from Mary C. Ferguson, a widow, to defendant in error, T. S. Cline, conveying to said Cline, as grantee therein, the ten acres of land described in the contract of sale and purchase executed by and between F. Z. Bishop and said Cline of date October 9, 1920, duly acknowledged by the grantor on the 13th day of October, 1920, conveying said ten acres of land for the consideration and on the terms and conditions stated in said contract of sale and purchase, to the introduction of which counsel for defendant in error Cline objected because he never knew anything about its existence prior to the time same was offered in evidence, which objection was sustained. This was error, in that said instrument was offered for the purpose of showing that one of the objections made to the abstract of title had been removed, and, further, that the seller, Bishop, was ready and able to comply with the terms of the contract under which Cline contracted to buy the land therein described.

The reasons urged as to why the instrument should have been excluded as evidence could only have found a proper place in an argument as to the effect that should be given said instrument, taking into account all the surrounding facts and circumstances leading up to the execution and tender of same in evidence.

[8, 9] Plaintiff in error sought to introduce testimony of one Jeff D. Stinson, who, if he had been permitted, would have testified as follows:

"I was in the employ of F. Z. Bishop on the 3d day of September, 1920, at the time the contract was made to sell T. S. Cline 10 acres of land, a part of block 51 of the Palmetal subdivision in Cameron county, Tex. It was a part of my duties to secure abstracts to the land sold by Mr. Bishop; to prepare title papers and to cure objections raised to the titles by attorneys who examined the titles for the purchasers. All objections made to any title by attorneys for purchasers were referred to me.

"I was familiar with the contract for the sale of the land to T. S. Cline. I received a duplicate copy of the contract about September 5, 1920, and on said date ordered an abstract of said property from H. M. Skelton at Brownsville. I did not receive the abstract at once, and on September 24, 1920, wrote again asking that he send the abstract at his earliest convenience. About the 1st of October, at the request of Mr. Bishop, I went to Harlingen, where I found that the abstract on the Cline deal had not been delivered. On October 5, 1920, I again requested the abstract from Mr. Skelton, the abstractor, asking him to rush it at once. On October 12th or 13th, I received a letter from Marshall & King, attorneys at Graham, Tex., requesting that the abstract to the Cline land be sent to them. I do not know exactly when this abstract was sent to Marshall & King, but I received a copy of the opinion of Marshall & King on the title to this ten acres contracted to be sold to Mr. Cline, and at the request of Mr. Bishop undertook to cure the objections raised. The abstractor had failed to show the seal of the Palmetal Company which was on the deed, and I had this done.

"The Rio Grande Valley Land Corporation had gone out of existence, and it was impossible to obtain a copy of the resolution authorizing the sale of J. B. Deisher or to find any of the old minutes of the company. I found that there had been an apparent mistake by which W. S. McEwen, who whas a stranger to the title, made a quitclaim deed to Jas. Deisher, and after a considerable amount of correspondence I located Mr. McEwen in Minnesota and secured a quitclaim deed from him. This took two or three weeks. I procured an affidavit that F. Z. Bishop never occupied this land as his homestead. The notes which were an incumbrance on the land were held by Mr. Davis of Harlingen, and I arranged to have this note paid off at the time the deal was closed. Mr. Davis agreed to send a release with the notes so that the matter could be taken up when Mr. Cline was ready to close.

"The title to the land was at that time in Mrs. C. Ferguson, a widow, of Dallas, Tex., who was represented by Mr. Jno. L. Greenfield, a relative of hers, and a salesman for Mr. Bishop. He was interested in the land and requested Mr. Bishop to sell it for Mrs. Ferguson. Bishop had an oral contract with Mrs. Ferguson and Mr. Greenfield to transfer the property to Cline. I knew at the time all the details of this contract. About the first week of October, I prepared and sent a deed to Greenfield to be executed by Mrs. Ferguson. On October 9, 1920, Mrs. Ferguson executed a conveyance to Cline of the ten acres of land in question and sent the deed to Mr. Bishop's office to be delivered to Cline when he was ready to close the deal. I knew that everything that was necessary to perfect the title was done, and we were ready to close the deal and could have closed it if Mr. Cline had not backed out. Mr. Cline's attorney, Mr. King, came to see me at Dallas some time in November, 1920, and informed me that Mr. Cline would not carry out the contract because the

objections to the title had not been met within the time specified in the contract."

To which testimony counsel for defendant in error T. S. Cline objected, "because it was irrelevant, unless the steps taken to remedy the objections materialized in documents put of record and included in the abstract and furnished to Cline to meet the objections made a merchantable title," which objections were sustained by the court. This was error, as the evidence offered was not subject to the objection made. However, objections could have been made which would have excluded a part of the testimony offered, a part being hearsay, another part irrelevant and immaterial, and a part the conclusion of the witness. Of the evidence so offered, that portion not subject to objection above indicated was relevant to be considered by the jury in passing upon the material issues raised by the pleadings, both as to the original cause of action and the cross action, and as the objection urged was only addressed to that portion of the evidence properly admissible, no objection, directly or indirectly, being addressed to the inadmissible portion thereof, the court erred in sustaining same.

All other assignments and propositions presented by plaintiff in error in support of his appeal have been carefully considered and, finding same without merit, are overruled.

Because of the errors above indicated, the judgment of the trial court is set aside and the cause remanded for further proceedings as to plaintiff in error only.

Reversed and remanded.