**Dissenting Opinion; Opinion Filed February 18, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00375-CV

### IN RE JEREMIAH PARKS, Relator

**Original Proceeding from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-18-00112-B**

# DISSENTING OPINION FROM DENIALS OF PETITION FOR WRIT OF MANDAMUS AND *EN BANC* CONSIDERATION

Opinion by Justice Schenck

This case presents important and recurring questions concerning proof of material facts at trial as they are affected by section 18.001 of the Texas Civil Practice and Remedies Code.[1] Specifically, owing to binding prior panel interpretation of this statute, the relator in this case will not be permitted to offer any evidence at trial or otherwise conduct a meaningful defense on the damages issue and will face a mandatory presumption of sufficiency that arises only from the trial court's wholly discretionary decision to admit one affidavit and exclude another. The resulting trial will be governed by this presumption regardless of the actual objective weight of the admitted affidavit and any subsequent appeal will be confined to an abuse of discretion review. Unless the trial court is later found to have abused its discretion any judgment against relator will be affirmed

---

[1] I note that certain changes have been made to section 18.001 and became effective on September 1, 2019. Most of those changes are directed to deadlines, and they do not impact my discussion of the statute as it applies in this case. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001.

without any evaluation at trial or on appeal of its actual sufficiency. With that knowledge in mind, relator's interest in pursuing that appeal will be tempered not just by the narrow scope of review, but by a practical comparison of the amount in issue weighed against the expense of the appeal and the second full trial[2] it would yield in the unlikely event of its success. At least some of these consequences are not compelled by the text of the statute. Because our existing construction raises serious constitutional concerns related to the parties' rights to a trial by jury, as well as their due process rights to a decision on the merits and to appellate review, I would read the statute differently to avoid those issues.

Because the issues presented here are important and recurring in nature, I agree with the recent decision of my colleagues in Tyler[3] that review of this issue by mandamus is warranted and, for like reasons, that immediate consideration of one of the many cases presenting this issue by the Court *en banc* is necessary. Accordingly, I dissent from our decisions to deny mandamus relief and *en banc* consideration.

## DISCUSSION

Section 18.001,[4] is marketed as "purely procedural" in operation, simply "providing for the use of affidavits to streamline proof of the reasonableness and necessity of" covered expenses

---

[2] *Rancho La Valencia v. Aquaplex*, 383 S.W.3d 150, 152 (Tex. 2012); Tex R. App. P. 44.1(b).

[3] *In re Brown*, No. 12-18-00295-CV, 2019 WL 1032458, at *6 (Tex. App.—Tyler Mar. 5, 2019, orig. proceeding) (mem. op.).

[4] As relevant, section 18.001 provides:

(a) This section applies to civil actions only, but not to an action on a sworn account.

(b) Unless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

* * *

(d) The party offering the affidavit in evidence or the party's attorney must serve a copy of the affidavit on each other party to the case at least 30 days before the day on which evidence is first presented at the trial of the case.

* * *

(e) A party intending to controvert a claim reflected by the affidavit must serve a copy of the counter-affidavit on each other party or the party's attorney of record:

(1) not later than:

sought by either party to a lawsuit. *Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011). While the statute is most often discussed in connection with the recovery of medical expenses in personal injury, malpractice and other like actions, its plain text applies more broadly to, among other things, claims for attorney's fees by the prevailing plaintiff or defendant. *See Good v. Baker*, 339 S.W.3d 260, 271–72 (Tex. App.—Texarkana 2011, pet. denied).

## I.  *Prior Appellate Interpretation of Section 18.001*

Prior interpretations of section 18.001 in appellate courts across the state have made great efforts to explain its operation and reach. One such case, *Beauchamp v. Hambrick*, 901 S.W.2d 747, 749 (Tex. App.—Eastland 1995, no writ), is among them and weighed heavily in an earlier panel decision of this Court that, in turn, controls our panel's disposition of this mandamus application. *See Ten Hagen Excavating v. Castro-Lopez*, 503 S.W.3d 463, 490–94 (Tex. App.—Dallas 2016, pet. denied); *see also Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court."). While I commend our earlier panel for its effort to reconcile these various authorities, and in particular to avoid a direct conflict with a sister court of appeals,[5] I am persuaded that *Beauchamp* effects subtle, but important changes in the reach and intended

---

(A) 30 days after the day the party receives a copy of the affidavit and

(B) at least 14 days before the day on which evidence is first presented at the trial of the case; or

(2) with leave of the court, at any time before the commencement of evidence at trial. CIV. PRAC. & REM. § 18.001.

[5] Lamentations over the fragmented nature of the Texas judiciary are hardly new. TEXAS RESEARCH LEAGUE, TEXAS COURTS REPORT I, at xvii (1990) ("[i]t is difficult to call the Texas judiciary a system."); *Lawyers, Laymen Urge Modernization of Texas' Antiquated Judicial System*, 27 TEX. B.J. 299, 305 (1964) (deriding our "unorganized and fragmented courts," as "archaic" and calling for "a single and unified court system."). While the intermediate appellate courts were originally created for the purpose of relieving docket pressure on the Supreme Court, they have swollen in number from 3 to 14. With well more than twice as many courts as any other state of like population, the Supreme Court's docket now consists in large part of resolving conflicts among courts who were created to reduce its workload. In view of these unfortunate and persistent realties, appellate courts should make every effort to refrain from creating unnecessary conflict.

operation of the statute and creates serious constitutional questions that can and should be avoided by a different construction of the statute.

Our decision in *Ten Hagen* provides an excellent description of the operation of section 18.001, as developed and described in *Beauchamp*.

> Section 18.001 *is an evidentiary statute* which accomplishes *three* things: (1) it allows for the admissibility, by affidavit, of evidence of the reasonableness and necessity of charges which would otherwise be inadmissible hearsay; (2) it permits use of otherwise inadmissible hearsay to support findings of fact by the trier of fact; *and (3) it provides for the exclusion of evidence to the contrary, upon proper objection in the absence of a properly filed counter-affidavit.*

*Ten Hagen*, 503 S.W.3d at 491 (quoting *Beauchamp*, 901 S.W.2d at 749)) (emphasis added). The first prong of *Beauchamp* is clearly in keeping with the statutory text and its purely "procedural" intended reach. *Beauchamp's* second prong—deeming the original affidavit as sufficient proof to support a judgment is at least still clearly anchored to the text. A trial judge's decision to admit evidence turns on relevance, which in turn depends only on the evidence having "any tendency," no matter how minimal, to simply make "a fact more or less probable." TEX. R. EVID. 401.[6] That the admission decision results in deemed sufficiency in weight creates separate concerns I will address below.

*Beauchamp's* third prong is directly at issue here and in every case where the trial court exercises its discretion to strike the counter-affidavit. The third prong is far less clearly indicated

---

[6] Suppose defense counsel in a case pending in Dallas County submits an affidavit in support of his client's claim for attorney's fees in which he states that he is a graduate of the University of American Samoa School of Law and avers that $200,000 is a reasonable fee for such a case. He supports that expert opinion with his billing statements and by relating a hearsay statement that another Dallas lawyer once recovered a like fee and notes that experts are entitled to rely on hearsay in forming expert opinions. *See Gannon v. Wyche*, 321 S.W.3d 881, 888 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The trial court's decision to recognize expertise is broadly assigned to its discretion. The plaintiff offers a counter-affidavit from his attorney, a graduate of New York University School of Law, noting he is aware of three like cases in the Dallas-Fort Worth area in which defense counsel recovered only between $20,000 and $50,000. Defendant moves to strike plaintiff's counter-affidavit, urging plaintiff's counsel's methodology is flawed because the geographic area upon which his opinion is founded is not sufficiently tailored geographically. The trial court strike's plaintiff's counter-affidavit as a matter of discretion. *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996). At trial the only evidence concerning the amount of the recoverable fees to the defendant then is his own counsel's affidavit, which ekes past the low admissibility bar but, in my view at least, would not constitute sufficient proof to carry the burden. The plaintiff's effort to call defense counsel to expand upon the affidavit is denied as an effort to put on an affirmative case. The attorney's fee issue is one that the Texas Constitution assures the plaintiff to resolution by jury trial. *Accounting Search Consultants v. Christensen*, 678 S.W.2d 593, 595 (Tex. App.—Houston [14th Dist.] 1984, no writ). Under these circumstances, I ask whether the plaintiff was afforded his right to a jury trial or due process at trial (to a decision on the merits) or the resulting appeal, which will be insulated from any review beyond discretion in finding an affidavit to be admissible?

in the text of section 18.001 and raises even greater concerns in this and most other like cases involving pre-trial challenges to the opponent's attempt to be heard on the merits and by a jury, or his right to a meaningful appeal thereafter.

## II.        *How I Interpret Section 18.001*

I believe section 18.001's text can be read as simply affording a party seeking recovery of covered expenses with the right to introduce an affidavit without regard to the hearsay objection that would otherwise bar its admission.

### A.        Section 18.001 as Read Without Reference to the Canon of Constitutional Avoidance

I note that section 18.001 is hardly a model of clarity, and thus, it is not surprising that trial court judges apply it in different ways. Nothing in its text directly addresses whether the original affidavit will even be admissible at trial for its truth in the face of a possible hearsay objection, only that the affidavit, if admitted, will be "sufficient" to support a finding of fact, if it is not "controverted." Indeed, this point was made directly by one of sister courts of appeal in the same year *Beauchamp* was decided. *See El Paso Pub. Util. Comm'n v. PUC*, 916 S.W.2d 515, 524 (Tex. App.—Austin 1995, writ dism'd by agr.).

Since judges have the general authority to rule on the admissibility of affidavits in other contexts, like summary judgment, the ability to do so here seems logical, if not stated explicitly. In fact, some judicial control of the filed affidavits—as well as the implications of its admission— would seem essential to allow the statute to accomplish anything. Were it otherwise, parties could simply file frivolous or irrelevant place-holder affidavits to create an entitlement to a "sufficiency" finding in the first instance, or like "counter-affidavits," equally devoid of admissible content, meant only to deprive the claimant of the procedural streamlining on the other.

The plain language of the statute says only that a claimant may "serve" an affidavit before the specified deadline—not "serve, file and obtain judge's approval of" same. The evident purpose

of the act is to provide the parties with a vehicle for streamlining disputes over whether (1) "a service provided" to one of the parties was necessary and (2) the amount was "reasonable at the time and place" it was performed. I take it as commonly understood that parties will often concede such points as collateral and unworthy of the time and effort to contest as they approach trial. "Serving" the affidavit, no matter how susceptible it might be to objection, reminds the opponent of the damage claim and serves notice that there is a potential witness available for trial. Likewise, "serving" the counter-affidavit, no matter how susceptible it might also be to objection, serves notice of the same.

From that point forward, however, the statutory text says nothing about the quality of either affidavit, motion practice, the judge's power to strike either affidavit, or the admissibility of either or both affidavits at trial. Neither party is obliged by the text of the statute to file, much less secure approval of, the affidavit. It could be that the legislature was silent on these points and simply left matters for admissible proof to trial. Thus, one plausible reading of section 18.001 would encompass *Beauchamp*'s first prong—that the legislature meant to permit an uncontroverted affidavit to be admitted at trial despite the hearsay rule barrier, if and only if, there is no counter-affidavit. It is also plausible that by providing requirements for the form and content of both affidavits, the legislature signaled an invitation to motion-to-strike practice as to both, though it might have also only left that question for a challenge to admission at the time of trial. *El Paso Pub. Util. Comm'n*, 916 S.W.2d at 524 ("section 18.001 does not address the *admissibility* of an affidavit but only the *sufficiency* of the affidavit to support a finding . . . .") (emphasis in original).

Where the claimant has filed an affidavit purporting to detail the nature and amount of the service charges and the opponent[7] simply stands mute, insofar as the admissibility or perhaps the

---

[7] As either the plaintiff or defendant may be seeking compensation for services provided under section 18.001, I will refer to the party objecting to be ordered to pay as the opponent.

truth of the affidavit is concerned, the opponent is in much the same position as a defendant who has been served with process but opts not to appear. He has waived his right to deny what the filing says insofar as it goes, but whether its averments are in fact sufficient to support a judgment would depend on the objective adequacy of its allegations, not the fact that it was "served" or even deposited in the clerk's office 30 days before trial. That question is quite different and not simply committed—along with the opponent's right to be heard by a jury at trial—to the "discretion" of the trial judge.

Where the claimant files an affidavit and no counter-affidavit is filed, I believe that *Beauchamp* correctly divines that the intention of section 18.001(b), albeit unstated in its text, is to allow the affidavit to be admitted at trial despite the fact that it would ordinarily constitute hearsay. This seems a necessary step if the affidavit is thereafter deemed to be "sufficient" to support the finding to which it relates, however one wants to construe that phrase.

Where I most strongly disagree with *Beauchamp*, however, is where an opponent files a counter-affidavit. In that case, *Beauchamp* continues to allow for the deemed sufficiency of the original affidavit to support a judgment or finding by declaring the process open to motion practice to strike one or both affidavits—something left solely to the discretion of the trial judge and reviewed only for abuse thereafter. *Beauchamp* further reads the language in section 18.001(e) to foreclose the opponent from presenting any evidentiary defense at trial, not only where that party filed no counter-affidavit but where he or she lost the discretionary battle over the motion to strike. As discussed below, both of these constructions create constitutional questions that I would avoid.

1. **The Text Does Not Call For Striking Either Affidavit or Barring Either Party From Putting on Further Evidence at Trial.**

Paragraph (e) of section 18.001 provides that a party intending to "controvert a claim reflected by the affidavit" must serve a counter-affidavit. CIV. PRAC. & REM. § 18.001(e). *Beauchamp* reads this as though it said "controvert a claim *by offering a defense at trial. . . .*" As

noted, nothing in the text suggests that the counter-affidavit is subject to being stricken in the first instance, or ceases to have any effect for purposes of allowing a merits-based resolution or permitting either side to present evidence at trial. If the target of the statute is simply to make the claimant's affidavit admissible, as it appears to be, then the better reading of the language "a party intending to contest a claim reflected by an affidavit" would likewise be targeted at the admissibility of the original affidavit—not a *de facto* default judgment.

Might the section be read more simply as requiring a counter-affidavit if the opponent intends to challenge the admission of the original affidavit, i.e. the "claim" as "reflected in the affidavit," leaving both parties free to try their case to jury thereafter? I'll concede that *Beauchamp*'s reading of section 18.001(e) as precluding any proof at trial is textually plausible as the "claim" can be understood to encompass all aspects of the proceeding, particularly since the next paragraph (f) requires the counter-affidavit to give notice of how the opponent would intend to attack the original affidavit at trial. *Id.* § 18.001(f). Of course, use of the term "claim" can just as easily indicate a legislative intent to direct both parties' proof to the service and its cost, regardless of how many various and different causes of action might relate to it. A bus passenger seeking to recover medical expenses stemming from an accident might sue for negligence or strict liability, for example. A single affidavit should suffice to give the opponent written notice of the damage argument the claimant wishes to pursue at trial despite the hearsay rule. If the opponent does not respond, the affidavit would come in. Nothing more. Nothing less.

2. ***Beauchamp* Introduces Outcome-Determinative Substance Into a Nominally Procedural Statute.**

Reading section 18.001(e) to foreclose proof at trial by either side also strains the idea that this statute is procedural or that the hearsay evidence it permits is "not conclusive." *Ten Hagen,* 503 S.W.3d at 491. As Judge Patrick Higginbotham once observed in a similar mandamus context,

changes in substance sometimes "come dressed as a change in procedure." *In re Fibreboard*, 893 F.2d 706, 711 (5th Cir. 1990). I believe this is one of those occasions.

As described by *Beauchamp*, section 18.001 forecloses the opponent from introducing any evidence at trial on a material, genuinely-disputed question of fact, ostensibly as a matter of procedure, on account of the failure to file a counter-affidavit or the decision of a trial judge, in his or her discretion, to strike it on the eve of trial. Indeed, that is precisely what happened in this case. Relator filed timely counter-affidavits only to have them stricken. Whether the effect here is merely potentially or actually determinative of the outcome is open to debate that in all events strains the notion that this statute is "procedural."

Sensitive to this bizarre consequence of *Beauchamp*, and in an effort to reconcile it with several still more confounding holdings of other sister courts of appeals, our *Ten Hagen* panel noted that those courts had not actually approved the opponent putting on a substantive defense or offering relevant evidence to the jury. *Ten Hagen*, 503 S.W.3d at 493–94. Instead, those courts had merely allowed the lawyers for those staked-to-the-ground clients to "argue" for the juries to ignore the only evidence admissible on the subject. That distinction, such as it is, is said to flow from the truism that "sufficient" evidence is not supposed to be synonymous with "conclusive" evidence and the notion that the statute, procedural as it is, could obviously not have that effect.

To begin, the notion that the opponent may not put on a substantive defense or introduce evidence at trial is said to flow from the conclusion that his failure to file an affidavit (or one that survives a discretionary ruling on a motion to strike) prevents him or her from, in the words of this statute, from "controverting the claim" *at trial* and not merely as it is presented in the affidavit for admission at trial. The common meaning of "controvert" is "to dispute or contest." BLACK'S LAW DICTIONARY (11th ed. 2019). If a party is barred from "contesting" or "disputing" "the claim" at trial, what is it exactly that his counsel might be doing when he begs the jury to ignore or reject

the claim if not "contesting" or "disputing" it? Thus, this effort to save *Beauchamp* from the implications of its own reading appears to stumble out of the blocks as it conflicts with the same statutory text that compelled it.

Quite apart from its textual inconsistency, this construction—driven as it is by the conclusion that the claimant's evidence is supposed to be merely "sufficient"—fails to account for the consequences of its own next step, which, in practice, renders it practically conclusive or at least tests our understanding of that concept. The question of whether a party has marshaled "sufficient evidence" is typically viewed at interstitial stages of the litigation and according to our well-travelled understanding of two things happening simultaneously but invisibly during the course of a trial—the burden of production and the burden of persuasion. *See* Robert W. Calvert, "*No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361 (1960); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56 (1981). When deciding whether the party with the burden of proof is entitled to move forward, we ask whether they have produced evidence that when viewed objectively is of sufficient weight and quality that, if believed, it could support a verdict and resulting judgment. That is "sufficient" evidence. In making that evaluation we are told—whether at summary judgment, directed verdict or on appeal—to look to *all of the evidence* and ask whether objectively reasonable and fair-minded jurors might find it to at least minimally support a verdict for the party bearing the burden of proof. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).

In some instances, as a case develops, we might allow the burden of production to move. In federal Title VII cases, for example, a plaintiff is entitled to a presumption of discrimination on a fairly light preliminary showing of disparate treatment, with the burden of production moving to the employer to show a non-discriminatory motive in order to shift the burden of production once more to the employee to show pretext. *E.g., Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S.

248 (1981). Critically, however, the burden of persuasion in these cases remains unaffected with the defendant merely being obliged to join the issue, not combat a durable presumption that the evidence against him is already sufficient such that he should lose unless he persuades the fact-finder that his proof is in fact superior to the presumption.

Thus, in a federal Title VII action, for example, the plaintiff's allegation that he or she is of one race and was denied promotion to a position filled by an applicant of a different race, is sufficient to shift the burden of production to the defendant to offer a legitimate reason for the decision and, if unrebutted, to resist summary judgment for the defendant. Of course, the defendant can likewise preserve his jury trial rights by producing an affidavit of any fact witness, *or* deposition testimony, *or* business records *or* any evidence in any form permitted under the rules to facilitate a merits decision.[8] The pre-trial practice, however, does not carry forward the burden to produce at trial to the defendant. In addition, during trial, the defendant would not be constrained in his ability to put forward evidence or be required to do more to preserve his right to a result under the evidence after he has produced any probative, responsive evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (once Title VII defendant comes forward with anything meeting his burden of production, the presumption "drops from the case."). All of this would effectively create an entitlement to summary judgment or directed verdict, something *Ten Hagen* correctly recoils from acknowledging as the result of *Beauchamp*'s second and third prongs.

Critically, when we evaluate legal sufficiency for purposes of a party's entitlement to proceed at all, we focus on the ultimate question and view the evidence as a whole. *City of Keller*, 168 S.W.3d at 823 (sufficiency question is the same at summary judgment, directed verdict, or on

---

[8] Section 18.001, does not allow for the use of discovery, a demand to further develop the issue framed in the affidavit by calling the original affiant, or any form of proof other than an affidavit made at the hand of "a person qualified by" knowledge, skill, education and the like" to testify in contradiction to the original affidavit. It requires that this witness be found or re-engaged in the 16-day window framed within the rule, and by its text will not allow the lawyer to simply submit a copy of an existing deposition transcript or report already in the parties' hands.

appeal); *Armstrong v. City of Dallas*, 997 F.2d 62, 65–66 (5th Cir. 1993) (same, Title VII despite shifting burdens of production). As it operates under *Beauchamp*'s reading of section 18.001, the only evidence at trial in this case will likely be the plaintiff's affidavit. As a result, the evidence will be practically, or at least functionally, conclusive, despite our resistance to the phraseology.

Whether the question arises on summary judgment, motion for directed verdict, as an objection to the submission of a jury question, or after the verdict as a motion for judgment notwithstanding the verdict or a motion for new trial, the trial court is obliged to look at the state of the evidence as a whole asking only the cold, objective question of what verdict a reasonable juror might enter in view of the evidence as a whole. In the trial imagined by *Beauchamp*, the claimant has by law already produced sufficient evidence before trial and the evidentiary picture is brought to a full, hard stop. While having "some evidence" is normally sufficient only to avoid an adverse judgment for the party with the burden of proof as a case moves through its various stages, that is true because the evaluation is holistic, including a review of the contrary evidence. When, in the end, the evidence is viewed as a whole and leaves the entire balance of the evidence on one side of the question, it is, by definition, "conclusive." This was the lesson of *City of Keller*. *See* 168 S.W.3d at 823. The notion that lawyers might argue (or beg) jurors to ignore the collective objective balance of the evidence and rely only on their common experience and wisdom is essentially a plea for nullification—something we rarely, if ever, permit in civil proceedings.

Consider a close analog to the situation *Beauchamp* suggests: a default judgment with unliquidated damages. The plaintiff appears at the prove-up hearing with two affidavits suggesting sufficient damage amounts within a range of, say, $10,000 and $15,000. Neither is conclusive as they differ from each other. Either, however, would be at least legally "sufficient." With liability, causation, and the fact of injury established as a matter of law, may the fact finder settle on zero as the appropriate damage number, presumably being unpersuaded by the entire picture of merely

sufficient evidence?  In that case, no.[9]  *See Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 425 (Tex. 2008) (where evidence established that at least some charges were reasonable and necessary, no evidence supported decision to award no charges); *see also Exel Trans. Serv. v. Aim High Logistics*, 323 S.W.3d 224, 234 (Tex. App.—Dallas 2010, pet. denied) ("According to Aim High, a jury has the discretion to award damages within *or below* 'the range of evidence presented at trial.'  However, the rule more specifically stated by this Court is that 'when the evidence supports a range of awards, an award of damages within that range may be an appropriate exercise of the jury's discretion.'") (emphasis added).  Allowing the jury to hear evidence that is deemed to be legally sufficient—and no other contrary evidence—leaves little room for debate if *City of Keller* is to be applied fairly to both sides of the docket.[10]

Why it would be that the legislature silently authorized a process that forecloses evidence after declaring it sufficient is difficult to fathom.  In fact, the notion that the legislature only called for "sufficient evidence" would seem to foreclose *Beauchamp*'s third prong precisely because it would have the practical effect of making that evidence conclusive where the defendant fails to file an affidavit or has its affidavit stricken.[11]

Carried to its natural conclusion, *Beauchamp*'s third prong—as I see it—calls for conclusive resolution of the fact issue, meaning that the claimant should be entitled to summary judgment or a directed verdict and the opponent's efforts to beg the jury to reject it (but somehow not "controvert" it) should be irrelevant.  But, ultimately, this debate over the weight to be given to an "uncontroverted" affidavit for these purposes can quickly resemble Aquinas's inquisitorial

---

[9] In that situation I believe we would be compelled, at a minimum, to find the evidence factually insufficient to support the finding and to require remand for a new trial because the finding is, at least, against the great weight and preponderance of the evidence.  *See Doe Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

[10] Thus returning to my illustration in n.6, what basis does the jury have for awarding any fee award to the Defendant other than $200,000?  If the hearsay statement related to the Defendant's expert is admissible (and it is), the fact that it should not of its own weight support a judgment no longer matters, it is deemed sufficient as a matter of law and no contrary evidence is admissible.

[11] I have no doubt that jurors will, on occasion, return verdicts for less than the amount supported by the deemed sufficient evidence, even though it is the only evidence available to them.  That begs the question posed by *City of Keller*: whether they properly might.

–13–

over how many angels can dance on the head of a pin. Even if one reads the statute to allow a plea to disregard all of the evidence *and* accepts that a jury might properly do so, there is still the undeniable prospect that the jury *might* credit the affidavit and render a verdict *even though* the minimally admissible affidavit would not constitute legally sufficient evidence. Worse still, the opponent has been deprived of the ability to respond other than by a pre-trial affidavit. And, in all events, there is no review of that sufficiency question, as it is deemed as a matter of law.

The real vice in *Beauchamp*'s second and third prongs is that it steers the legislation onto dubious constitutional grounds. Relator and its supporting *amici* press the entitlement to immediate mandamus review because of the catastrophic and immediate implications compelled by our statutory construction of section 18.001. Our panel was obliged to follow that construction despite the urgency it would create to provide immediate review. The court sitting *en banc* would be free to reconsider *Beauchamp* anew.

**B.      The Texas and Federal Constitutions Afford Parties to Civil Proceedings the Rights to a Decision on the Merits and by a Jury – The Statute as Read by *Beauchamp* Does Not**

Whenever we consider the construction of a statute, we are compelled by law "to construe statutes in a manner [that] avoids serious doubts" and prefer any "'fairly possible'" reading that avoids the problem. *Fed. Sav. & Loan Ins. Co. v. Glen Ridge I Condos, Ltd.*, 750 S.W.2d 757 (Tex. 1988). I will now turn to explain what I see as serious constitutional questions created by section 18.001 as construed by *Beauchamp* that can be avoided by a more modest construction.

Litigants in civil proceedings are entitled by the Fourteenth Amendment of the United States Constitution and our Due Course of Law Clause to (1) reasonable notice of a claim, (2) a meaningful opportunity to be heard, and, (3) a decision on the merits. TEX. CONST. art. I §19. The

Texas Constitution separately provides the right to trial by jury. TEX. CONST. art. I, §§ 10, 15.[12] Where state law denies a civil litigant the right to due process, the declaration that a judge approves of the result is no answer; the process is the right. *Peralta v. Heights Med. Ctr.*, 485 U.S. 80 (1988). In this case, the assured process includes a right to the ultimate form of hearing—a trial by jury. So, I will begin there.

Of course, the federal Seventh Amendment has no direct application in state court, but its interpretation is still instructive. *See City of Corpus Christi v. Pub. Util. Comm'n*, 51 S.W.3d 231, 242 (Tex. 2001). "The aim of [that] amendment," as the Supreme Court has held, "is to preserve the substance of the common-law right of trial by jury, as distinguished from mere matters of form or procedure, and particularly to retain the common-law distinction between the province of the court and that of the jury, whereby, in the absence of express or implied consent to the contrary, issues of law are to be resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court." *Baltimore & Carolina Line v. Redman*, 295 US. 654, 657 (1935). The common-law right did not permit a party to judgment on a jury verdict in the absence of evidence of such a weight and quality that objectively reasonable jurors could arrive at the same result. Edward Burnet, *Summary Judgment is Constitutional*, 93 IOWA L. REV. 1625 (2008) (collecting authorities). Critically, however, the question of whether the evidence in any given case is objectively sufficient is itself a question of law. *Redman*, 295 U.S. at 659; *Masterson v. Cline*, 264 S.W. 204, 206 (Tex. App.—Dallas 1924, no writ) (where material evidence is genuinely disputed resolution by court denies right to jury trial).

Thus, summary judgment, directed verdict, and legal sufficiency review all fit comfortably within the constitutional limitation because they are appropriate only where, as a matter of law, a

---

[12] The Seventh Amendment to the U.S. Constitution has not been held to apply to the states. *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211 (1916).

court determines jurors could not reasonably disagree with the result. These avenues for disposition are carefully constrained around principles favoring decisions on the merits and sufficiency of the evidence and do not improperly shift burdens of proof. This is illustrated by the fact that a movant for no-evidence summary judgment may not move for judgment on a claim or defense on which it has the burden of proof. *See* TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Equally critical, in all of these contexts, the litigants' rights to appellate review of the legal question of whether they were in fact entitled to resolution of the issue by a jury—a crucial constitution question itself—are assured. Here, however, as read by *Beauchamp* and prior panel authority, they evaporated in Austin and were reduced to a matter of discretion in receipt or rejection of the one form of proof permitted by the statute; and a result, appellate review will depend on the unlikely showing of abuse.

The relator's right to present evidence here and his right to a decision on the evidence is also affected by the creation of a presumption of deemed sufficiency—*Beauchamp*'s prong 2. By this point in time, there should be no doubt legislative fiat cannot take the "place of fact . . . in determining issues involving life, liberty, or property." *Western & A.R.R. v. Henderson*, 279. U.S. 639, 642 (1929). The presumption created under *Beauchamp* does not depend on any weighing of the quality of the proof submitted in the original affidavit. While it would normally require conclusive evidence from the party bearing the burden of proof to truncate the opponent's right to respond at trial, here the claimant's proof need not be reviewed for legal sufficiency, only admissibility, before it is deemed to be sufficient to support a resulting verdict and resulting judgment.

Ignoring for the moment that the opponent will not be allowed to present evidence, a statute creating an unreasonable presumption will generally fail federal due process scrutiny—as I expect it would our own due course of law and jury trial assurances. The relator in our case has "served"

responsive affidavits. Nevertheless, the claimant's evidence will be deemed sufficient regardless of its objective weight. While the statute might well allow for a presumption upon the claimant's introduction of merely *some* evidence, the idea that the opponent must overcome it is something that the federal system has avoided, as noted above. That application is likely a product of the United States Supreme Court decisions striking down state statutes under the fourteenth amendment as arbitrary or unreasonable because they required the defendant to produce evidence sufficient to defeat the presumption. *E.g.*, *Henderson*, 279 U.S. at 642 (striking Georgia statue with presumed sufficiency and contrasting it with like Mississippi statute that did not); *Johnson v. Atlantic Coastline Ry.*, 60 S.E.2d 226, 229–31 (S.C. 1950) (collecting like authority).

In *Henderson*, of course, the Supreme Court did not have a jury trial right to add to the problem and did not confront a statute making the right to put on evidence dependent on a discretionary ruling of the trial judge. That issue would go to the separate due process question of whether the statute "operates to deny a fair opportunity to respond to the presumption"—a question raised by prong 3 of *Beauchamp*. *Henderson*, 279 U.S. at 642. As envisaged by *Beauchamp*, however, section 18.001 has the same effect as *Henderson*, creating an evidentiary presumption for the claimant before trial (prong 2), shifting the burden of production to the opponent at trial, while simultaneously foreclosing any contrary evidentiary presentation (prong 3) based, not on the actual quality of the proof as a whole, but its form and the trial judge's discretion to permit it before the trial starts.

Viewed as a question of due process, a decision on genuinely disputed merits can be denied without violating a constitutional right only when good cause exists for such a decision; such as in cases of default judgment or where sanctions are appropriate. *See Holt Atherton Indust., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992) (no answer default judgment "adjudication of the merits is preferred"); *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 185 (Tex. 2012)

(sanction of striking defendant's answer for willful non-compliance with rules puts defendant in position as though it had never answered the suit). But even in those extreme cases, the rules guard against these results precisely because of the constitutional implications involved, and appellate and collateral review regimes are in place to avoid arbitrary deprivation. *E.g.,* TEX. R. CIV. P. 243; *Peralta*, 485 U.S. at 86 (judgment rendered without service violates due process); *Lopez v. Lopez*, 757 S.W.2d 721, 723 (Tex. 1988); *Caldwell v. Barnes,* 154 S.W.3d 93, 96-97 (Tex. 2004); *TransAmerican Nat. Gas v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (sanction precluding merits disposition may not be imposed as a routine matter of discretion and are closely reviewed).

### 1. Our Reading of Section 18.001 Does Not Align With Other Pre-trial Procedure

Some might suggest that the result of the stricken affidavits here is no different from other pre-trial proceedings that have the practical effect of foreclosing the presentation of some evidence at trial. I disagree.

In this case, and under this statute generally, there is no requirement that the original affidavit show anything relative to the weight or quality of its averments before it is deemed "sufficient" evidence to support a judgment against the adversary. And, worse, the decision of whether to strike the counter-affidavit—critical to the opponent's right to be heard on a potentially genuine, material fact question at trial—is not limited to the legal question of whether a jury might reasonably act upon it. Instead, it and the opponent's associated right to trial by jury, is left to the discretion of the judge with respect to whether to admit it. I am not aware of any procedure that would allow for a question of fact that is both material—that is to say essential to the resulting final judgment—and potentially genuinely disputed to be decided without a jury where one is requested and the right otherwise applies.

I acknowledge there are other circumstances where a defendant might, as a practical not statutory matter, be barred from presenting some evidence at trial and pause to explain why, unlike

–18–

section 18.001, they do not operate to create the same constitutional concerns. Section 166a(i) of the Texas Rules of Civil Procedure allows a party to file a no evidence motion for summary judgment after there has been an adequate time for discovery requiring that the party with the burden of proof present some evidence to support its claim or defense. TEX. R. CIV. P. 166a(i). Unlike section 18.001, that rule is structured to avoid the prospect of what is effectively a reverse demurrer of the type at play here—where a party bearing the burden of proof on an issue demands (at the eleventh hour no less) that his opponent come forward with evidence establishing why *the movant* should not prevail. But even there (or in connection with a traditional summary judgment) a party responding to a summary judgment can defend their right to trial with, *in addition to affidavits*, use of any discovery response, party admission, and deposition transcript, or other available evidence, to defeat the motion and preserve the right to present evidence at trial. The response is not channeled temporally or substantively to a single means of response to be accepted or rejected as a matter of discretion of the trial judge, and reviewable only for abuse thereafter.

Thus, for example, in response to such a traditional summary judgment motion, the non-movant might point to the evidence supporting the motion as merely admissible or perhaps even sufficient where, as here, he does not carry the burden of proof and note his intention to call and examine the affiants at trial. If that same evidence is alleged to be conclusively favoring the movant—something we imagine not to be true in this context—he is still undeniably within his rights to respond with deposition transcripts, interrogatory responses or admissions that tend to disprove the claimant's theory. In these ways, summary judgment in Texas is carefully structured to preserve the right to trial by jury by (1) directing the burden of production and persuasion to the party bearing both; (2) limiting the judgment it directs to those cases where the right is shown as a matter of law and objective fact not to be extant; and (3) reduces the risks of erroneous or arbitrary deprivation by affording the backstop of plenary appellate review.

Under section 18.001, the party responding to an opening affidavit may not preserve the right to trial by attaching the plaintiff's own admission that the fees at issue were excessive, even if he had obtained it at a deposition admitting the opposite or as a response to a request for admission doing the same. To be sure, we might attempt to write yet another ersatz fix into the statute to save it from itself by which the trial court might allow receipt of such proof, but—according to *Beauchamp* and cases following it—the plain language of paragraph (f) speaks for itself and allows only a single form of response to save the right to merits resolution at trial—an affidavit from an expert as accepted (or not) by the trial judge.

In addition, pursuant to rule 193.6 of the Texas Rules of Civil Procedure, a party may be precluded from presenting a particular piece of expert witness testimony if he or she fails to timely designate or supplement the expert's opinions. TEX. R. CIV. P. 193.6(a). Notably, even that rule builds in a safeguard in that the evidence will not be excluded if there is good cause for the failure to timely make, amend, or supplement the disclosure, and the failure to timely disclose will not unfairly surprise or unfairly prejudice the other party and provides that a continuance may be granted to in essence cure the untimeliness of a disclosure. *Id.* More importantly, and unlike section 18.001, rule 193.6 does not preclude a party from introducing other evidence or contesting the other party's position through cross-examination at trial. *Id.* In contrast, section 18.001 channels a party's ability to present evidence to a single form of proof, the admissibility of which is left to the discretion of the trial court.

### 2. Decisions On Deemed Sufficiency and Without A Right to Put On Relevant, Admissible Evidence Risks Present Unreasonable Risks of Erroneous Deprivation

The due process right undeniably includes a right to a meaningful hearing reasonably tailored to avoid the risk of erroneous deprivation of property rights. *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). In this case, that hearing is a trial. I believe that decisions at trial on material genuinely disputed factual matters without regard to the actual facts, deny due process unless they

are a product of a sanction or a conscious, inexcusable failure to join the issue in responding that necessitates the extreme relief. *See Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 134 (Tex. 1939); *Enviropower, L.L.C. v. Bear, Stearns & Co., Inc.*, 265 S.W.3d 16, 21 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *see also Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 339 (1969).[13]

Under *Beauchamp*'s construction of section 18.001, however, the opponent who has failed to file a controverting affidavit, or who has had its affidavit stricken, is denied an opportunity to present relevant evidence at trial and, the decision with respect to sufficiency of the evidence has been made by the legislature and the trial judge—not the jury to whom the issue is constitutionally reserved. Moreover, on appeal, the opponent may not argue that the claimant's affidavit was not in fact sufficient to overcome his right to participate meaningfully at trial or to have the decision as to its sufficiency made by a jury. *Lindsey v. Normet*, 405 U.S. 56, 77 (1972); *In re Longview Energy Co.*, 464 S.W.3d 353, 359 (Tex. 2015) (when permitted, a party has a right to a meaningful appeal). And we would have no ability to determine actual sufficiency in this one unique setting because the legislature has deemed an admissible affidavit to be sufficient. Our only review is for abuse of discretion in striking affidavit. That aberrant denial of review may itself constitute yet another due process violation. *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 431 (1994) (aberrant denial of appellate scrutiny denies due process).

To be clear, I do not necessarily (or even purport to) conclude that section 18.001 is unconstitutional in this or every case to which it applies. Rather, I merely suggest that the construction it has been afforded under controlling panel precedent raises serious constitutional

---

[13] Viewed in the light of the handoff between the trial courts and ourselves, the parallels to the problem in *Sniadach* become apparent—as does the need for mandamus review in light of our current construction of section 18.001. In the typical case, the parties will be arguing over an amount far less than cost of trial, much less the cost of an appeal and retrial should we find an abuse of discretion in striking the counter-affidavit. In the meanwhile, the leverage brought to bear on the opponent—i.e., the cost of the appeal (likelihood of showing abuse) and a retrial—put the would-be appellant in the same position as the Wisconsin debtor subject to assumption that the garnishment filing is correct.

questions that can and should be avoided by a construction that would limit its reach. As directed by law, I would prefer that construction.

For the foregoing reasons, I respectfully dissent from the denial of relator's petition for writ of mandamus and the denial of *en banc* consideration.

CONCLUSION

That "trial" envisioned by our existing panel precedent embracing *Beauchamp* will be one in name, but insofar as the damage issues involved here are concerned, that "trial" and any appellate review of it will be alien to our understanding of it. The evidence deemed sufficient, may not in reality be sufficient, and the defendant-relator's right to respond with a substantive defense will likewise not depend on any assessment of the collective weight or quality of the proof as would otherwise be required to deny either of the parties of their right to a jury resolution. Our review thereafter will be limited at a whisper-thin search for abuse of discretion. Under these unique circumstances, mandamus is proper,[14] and the appeal will be inadequate. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding) (meaning of adequate in this context has "no comprehensive definition" and encompasses private interests in delay and costs as well as public interests in the development of the rule of law).

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

190375DF.P05

---

[14] *In re Fibreboard*, 893 F.2d at 711; *In re Brown*, 2019 WL 1032458, at *6.